ELIPHALET W. BLATCHFORD *et al.*

*v.*

N. B. BOYDEN, for use, etc.

*Filed at Ottawa November 11, 1887.*

1. PARTIES—*in replevin.* Where goods levied on under an execution are replevied, the officer having their legal custody is the proper person to be made a defendant. The plaintiffs in the execution are not necessary, or even proper, parties to the suit.

2. REPLEVIN—*to whom property is to be returned on writ of retorno habendo.* Where goods levied on by a sheriff, and held by him under an execution, are taken from his custody by writ of replevin, they can be rightfully returned to him alone upon a writ of *retorno habendo.* The plaintiffs in the execution having never had the goods in possession are not entitled to have return thereof made to them, but they must be returned to the sheriff, to be applied in satisfaction of the execution in his hands.

3. ALLEGATIONS AND PROOFS—*in suit on replevin bond—as to identity of person for whose use the suit is brought.* In replevin against a sheriff for goods levied on by him under an execution, the bond is properly made to the coroner, and, upon condition broken, that officer may sue thereon for the use of any person damaged by the wrongful suing out of the writ, or by the failure of the plaintiff to return the property as awarded. And when the plaintiff in execution is also made defendant in replevin, and named as a defendant in the replevin bond, he may be joined as one in use with the sheriff; but the right to enforce the entire liability being in the sheriff, the plaintiff in execution being joined as defendant in the replevin suit, or as a usee in the suit on the bond, can in no way affect the sheriff's right of recovery, or add to the liability of the obligors in the bond, and hence describing such plaintiff in execution as the assignee of a wrong person will not defeat a recovery or afford ground to exclude the bond.

4. A sheriff levied an execution in favor of A, as assignee of the estate of B, upon goods, when a third person replevied the same in an action against the sheriff, and A, as assignee of the estate of C, who was described in the same way in the replevin bond: *Held,* that in an action on the bond, by the coroner, for the use of the sheriff, and A, assignee of the estate of B, the coroner might, by apt averment, and proof of the misdescription of A, recover upon the bond, for the use of the party damaged.

5. CHATTEL MORTGAGE—*necessity of recording—purchasers, etc., with actual notice.* Under our statute, the recording of a chattel mortgage is as essential to its validity, as against third persons, as any other element entering into the making of a valid chattel mortgage. It is a valid lien only

42—122 ILL.

from the time of its being filed for record, even as against purchasers and creditors with actual notice.

6. SAME—*how to preserve the lien.* As against third persons, creditors or purchasers, the lien of a chattel mortgage can be preserved in only two ways: by the mortgagee taking and retaining possession of the property, or, if the mortgagor is to retain possession, then by the recording of a properly executed and acknowledged chattel mortgage providing for such possession.

7. EXECUTION LIEN—*as to chattels—when it attaches.* The lien of an execution in the hands of an officer attaches to all property which the debtor may own, or which he may acquire during the life of the execution. If, therefore, goods and chattels become the property of the execution debtor by sale and delivery to him, without the preservation of a lien for the purchase money in the form prescribed by the statute, the execution lien immediately attaches.

8. ERROR WILL NOT ALWAYS REVERSE — *improper instructions.* A modification of an instruction as to one point in a case, even if erroneous, is no ground of reversal, where it is evident that it worked no injury to the party complaining, as, where the jury must have found against him on another ground.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

This was an action of debt, brought by the appellee, N. B. Boyden, coroner of Cook county, who sues for the use of Seth F. Hanchett, sheriff of Cook county, James H. Burke, John L. Barnum, Ralph Arthur, and Robert E. Jenkins, assignee of the estate of Josiah R. Butler, against E. W. Blatchford, Caleb F. Gates and Nathaniel H. Blatchford, upon a replevin bond.

The facts giving rise to this action are, that on April 6, 1883, Hanchett, sheriff of Cook county, having in his hands two executions against Charles S. Munson, (one in favor of John L. Barnum and Ralph Arthur, for $1048.65 and costs, issued February 10, 1883, from the Superior Court of Cook county, and one in favor of Robert E. Jenkins, assignee of the estate of Josiah R. Butler, for $733.14 and costs, issued March 1, 1883, from the circuit court of Cook county,) levied said executions upon certain goods and chattels, consisting of the furni-

ture and fixtures in the Massasoit House, Chicago, as the property of Charles S. Munson. On the following day, April 7, 1883, Eliphalet W. Blatchford and Caleb F. Gates brought an action of replevin against the sheriff, and Burke, his deputy,. and the plaintiffs in the executions, and caused the coroner to replevy said goods from the sheriff, and deliver the same to the plaintiffs therein. In this suit the replevin bond was given,. N. H. Blatchford being surety for the plaintiffs. When this replevin suit came on for trial, the plaintiffs therein dismissed the same, and a return of the goods was awarded, and this suit was brought on the bond in that suit.

The defendants filed four pleas, as follows: *Nil debet* and *non est factum,* and two special pleas in mitigation of damages. The third plea was, in substance, that no trial of said replevin suit in said declaration mentioned was ever had in said circuit court of Cook county, and that said replevin suit in said declaration mentioned was dismissed by the plaintiffs therein,. and the defendants aver that the said judgment in said action of replevin was entered upon the dismissal of that action in the circuit court of Cook county, and so the defendants say that the merits of the case were not determined in said action of replevin. And said defendants say that the goods and chattels in said writ of replevin mentioned, at the time when,. etc., were the property of the said E. W. Blatchford and Caleb F. Gates, and not of the said plaintiffs, and this the defendants are ready to verify.

The plaintiff replied that he ought not to be barred, because he says the goods and chattels in said writ of replevin and writing obligatory mentioned, were, at the time when, etc.,. the property of said defendants in said writing obligatory mentioned, and not of the said E. W. Blatchford and Caleb F. Gates, as of said third plea alleged; and this he prays may be inquired of by the country.

The fourth was, in substance, *actio non,* because they say that the goods and chattels replevied were, at the time when,.

etc., the property of the plaintiffs Blatchford and Gates, and that the merits of the case have not been heard and were not determined in said cause. And the defendants aver that no trial was ever had of said replevin suit, and that said suit was dismissed by the plaintiffs therein, and that the right of property to the goods and chattels, etc., was not determined in said replevin suit.

The plaintiff replied that he ought not to be barred, etc., because he says that said goods and chattels in said replevin writ and writing obligatory mentioned, were, at the time when, etc., the property of the defendants in said writing obligatory mentioned, and not of the said defendants Blatchford and Gates.

A demurrer was sustained to the first plea, and issue joined on the second by adding the *similiter.*

Blatchford and Gates claimed the property under a chattel mortgage, dated April 4, 1881, from Charles S. Munson to them, under their firm name of E. W. Blatchford & Co., to secure payment of three promissory notes, payable to said firm, one for $4800, due on or before six months from said date, and one for $5800, due on or before twelve months from said date, both signed by Charles S. Munson and Maggie Munson, and one for $13,000, due on or before two years from said date, signed by Charles S. Munson. The mortgagees were authorized to take possession on default, and sell the property at public auction or at private sale, with or without notice, for cash or on credit. On April 5, 1883, in the forenoon, Blatchford and Gates went to the Massasoit House, where the property then was, and took formal possession of the property, without moving it or in any way disturbing it, as it was distributed about the house. They then executed to Munson a bill of sale of the property for $30,000, taking back a chattel mortgage to secure notes aggregating $33,400, which was on the same day, at eleven o'clock A. M., recorded. At about noon of the same day Blatchford and Gates gave possession

back to Munson, and on the following day the sheriff levied on the property, by virtue of the executions in his hands.

A trial was had, resulting in a verdict and judgment in favor of the plaintiff, for $2543.50, costs of suit.

Messrs. LYMAN & JACKSON, and Mr. DAVID FALES, for the appellants:

The court erred in modifying appellants' instructions, to the effect that a chattel mortgage does not take effect, as against third persons, until it is recorded, thereby imposing the burden on appellants of proving that possession of the goods was not delivered to Munson until his mortgage was acknowledged and recorded.

A chattel mortgage can only operate on the property then actually belonging to the mortgagor; and a mortgage of goods which the mortgagor does not own at the time of making the mortgage, though he may after acquire them, is void as to third parties. Jones on Chattel Mortgages, sec. 138; Herman on Chattel Mortgages, sec. 46; Perkins on Title Grant, sec. 65; *Titus* v. *Mabee*, 25 Ill. 257; *Hunt* v. *Bullock*, 23 id. 320; *Roy* v. *Goings*, 6 Bradw. 162; *Stowell* v. *Blair*, 5 id. 104; *Williams* v. *Briggs*, 11 R. I. 476; *Gregg* v. *Sanford*, 24 Ill. 17; *Pettis* v. *Kellogg*, 7 Cush. 456; *Jones* v. *Richardson*, 10 Metc. 481; *Otis* v. *Sill*, 8 Barb. 102; *Chesley* v. *Josselyn*, 7 Gray, 489; *Gardner* v. *McEwen*, 19 N. Y. 123; *Griffith* v. *Douglas*, 73 Maine, 532; *Hamilton* v. *Rogers*, 8 Md. 301; *Pierce* v. *Emery*, 32 N. H. 484; *Looker* v. *Peckwell*, 38 N. J. 253; *Hunter* v. *Bosworth*, 43 Wis. 583; *Lane* v. *Morton*, 7 M., G. & S. 379.

Delivery of possession is necessary to consummate and perfect a sale of personal property, and until such possession was given, a chattel mortgage on the goods not delivered will be void.

The mortgagee had the right to sell to the mortgagor, and the mortgagee had the right to purchase at a foreclosure sale. Jones on Chattel Mortgages, 810; *Bame* v. *Drew*, 4 Denio, 287.

Under the principle of law established by an unbroken line of authorities, the mortgage for the purchase money took pre-cedence of all prior liens, and the liens of the executions in the hands of the sheriff. *Curtis* v. *Root*, 20 Ill. 53; *Austin* v. *Underwood*, 37 id. 438; *Fitts* v. *Davis*, 42 id. 392; Jones on Mortgages, sec. 464, *et seq.; Christie* v. *Hale*, 46 Ill. 117; *Speer* v. *Skinner*, 35 id. 282.

Mr. C. STUART BEATTIE, and Mr. HENRY S. GOLDSMITH, for the appellees Barnum and Arthur:

The plaintiffs in the executions, nominal or beneficial, hav-ing no property, general or special, in the goods, were not necessary, or even proper, parties to the replevin suit. Wells on Replevin, sec. 143; *Richardson* v. *Reed*, 4 Gray, 441; *Grace* v. *Mitchell*, 31 Mass. 533; *Mitchell* v. *Roberts*, 50 N. H. 486.

The sheriff was the proper person to recover, in the name of the coroner, for his own use, as sheriff, the amount of the liens represented by both the executions in his hands, and this right was in no way affected by the act of the plaintiffs in the replevin bond, in improperly joining the execution creditors as co-defendants with him, and naming them as such defendants in the condition of the bond. *Matthews* v. *Storms*, 72 Ill. 320, and *Arter* v. *People*, 54 id. 230, referred to, have no application.

The law requires a mortgagee of chattels to take and retain possession of the property on default. *Reed* v. *Eames*, 19 Ill. 594; *Burnham* v. *Muller*, 61 id. 456; *Thompson* v. *Wilhite*, 81 id. 356; *Ticknor* v. *McClelland*, 84 id. 472.

A chattel mortgage is only a lien by virtue of the statute, which makes it a lien only from the time of its record. Rev. Stat. chap. 95, sec. 4; *Burnham* v. *Muller*, 61 Ill. 456; *Self* v. *Sanford*, 4 Bradw. 328.

But the jury have found that the so-called foreclosure of the chattel mortgage was not *bona fide*, but colorable, merely.

Mr. W. H. SISSON, and Mr. C. F. GOODING, for the appellee Jenkins:

The right to enforce the entire liability upon the bond was in the sheriff, and no additional liability was imposed upon the obligors by naming Jenkins, in any form, as a usee.

An action at law upon a contract must be brought in the name of the party holding the legal title. *Larned* v. *Carpenter*, 65 Ill. 543; *Dix* v. *Insurance Co.* 22 id. 272; *Lovejoy* v. *Stelle*, 18 Bradw. 281.

This bond runs to the coroner, and the addition of other parties in nowise affects the legal liability of appellants upon it, but only serves to identify the action in which it was filed.

The statute limits the lien of a chattel mortgage to two years. After April 4, 1883, the mortgage became of no validity. Possession was not taken until the day after the lien had expired.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The declaration filed in this case is in the usual form, except that it is averred that said Robert E. Jenkins, as assignee of Josiah R. Butler, was plaintiff in execution in one of the executions levied by said sheriff, etc., and was incorrectly described in said bond as assignee of Josiah R. Barker. Defendants pleaded *non est factum*, and two special pleas, in mitigation, setting up that the merits of the case had not been determined in the action in which the bond was given, and title to the property in themselves, under chattel mortgage, etc. Issue was joined, and a trial resulted in a verdict and judgment thereon for plaintiff for $2543.50. On appeal to the Appellate Court this judgment was affirmed, and the defendants below prosecute this further appeal.

The first point urged for reversal is, that it was error for the circuit court to admit the replevin bond in evidence,—the liability taken upon the obligors therein, being, as it is said, to

Jenkins, assignee of Barker, and not to Jenkins, assignee of Butler, for whose use this suit is brought. The replevin bond was properly given to the coroner, and, upon condition broken, that officer was authorized to maintain suit thereon for the use of any person damaged by the wrongful suing out of the writ of replevin, or by the failure of the plaintiffs in replevin to return the property awarded to be returned by the judgment of the court. The property, at the time of the replevin, was in the legal custody of the sheriff, under his execution, and he was the proper person to be made defendant in the replevin suit. The return of the writ would show that it was taken from his possession, and to him only could it rightfully be returned upon the writ *retorno habendo.* The plaintiffs in execution were not necessary or proper parties to the replevin suit. They had no possession of or property in the goods and chattels replevined. It is clear, we think, that upon return of the goods and chattels being awarded, the plaintiffs in execution, who never had been in possession of them, or had general or special property in them, could not claim to be entitled to possession thereof, but they must be returned to the custody from whence they were taken, to be applied by the sheriff in satisfaction of the executions in his hand. Wells on Replevin, sec. 143; *Richardson* v. *Reid,* 4 Gray, 441; *Grace* v. *Mitchell,* 31 Wis. 553; *Mitchell* v. *Roberts,* 50 N. H. 486.

The plaintiffs in execution, having been made defendants in the replevin suit, and named as such defendants in the condition of the bond, were properly joined as usees, with the sheriff, but the right to enforce the entire liability being in the sheriff, their being joined as defendants in the replevin suit, or as usees in this, can in no way affect the right of recovery of the sheriff, or add to the liability of the obligors in the replevin bond. Jenkins and the other plaintiffs in execution are but nominal parties, at most, and their being joined or not, as beneficial plaintiffs, can in nowise prejudicially affect appellant. But if it was otherwise, there is no pretense that the

plaintiff Jenkins is not the party who was plaintiff in the execution levied by the sheriff, and under which he held the property replevied by appellant, and the only thing complained of is, that the office or use for which he had obtained the judgment upon which the execution was issued, was improperly described in the bond. It will be remembered that Jenkins is not an obligee in the bond, nor is he attempting to enforce any liability thereon, and we see no reason why the coroner may not, by apt averments in the declaration, and proof of the misdescription, recover upon the bond for the use of the party damaged.

The chief controversy, however, arises upon the special pleas in mitigation of damages. To maintain these pleas, appellants offered in evidence a chattel mortgage, executed by Charles S. Munson, to them, under the firm name of E. W. Blatchford & Co., to secure the payment of three promissory notes, payable to E. W. Blatchford & Co., one for $4800, due in six months, one for $5800, due in twelve months, and one for $13,000, due in two years from date, and all bearing date April 4, 1881. It was provided in the mortgage, that in case of default the mortgagees might take possession of the mortgaged property, and sell the same at public auction, after giving notice, or at private sale, with or without notice, for cash or on credit. The whole of the notes being due and unpaid, it appears that Gates, acting for the mortgagees, on the morning of the 5th of April, 1883, went through the rooms of the hotel, and formally took possession of the property. After it is claimed they took possession of the property, appellants claim to have sold back to Munson the entire property, for the consideration of $30,000. A bill of sale was made, purporting to have been made by virtue of the terms and provisions of said chattel mortgage of April 4, 1881. Nothing was paid by Munson on the purchase. However, as part of the same transaction, he executed notes, and a chattel mortgage to secure the same, all bearing date April 5, 1883, under which last chattel mortgage appellants

now claim they were entitled to the possession of said goods and chattels as against the liens of the executions in the hands of the sheriff. It is contended by appellants that their taking possession of the property under the chattel mortgage of April 4, 1881, the sale thereof to Munson in accordance with the terms and conditions of that mortgage, the execution of the bill of sale, and the making, acknowledging and recording of the chattel mortgage of April 5, 1883, were continuous acts, all parts of the same transaction, and that therefore the lien of the executions then in the hands of the sheriff, did not attach.

It will not be necessary, in this case, to determine whether the mode of foreclosure adopted, if it had been undertaken and carried out in good faith, would have created a superior lien under the mortgage or not. By the sixth and ninth instructions given at the instance of appellants, the jury were told that if they believed, from the evidence, that default had been made under the chattel mortgage of April 4, 1881, and that possession was taken by the mortgagees immediately upon said default occurring, then the legal title to the goods covered by said mortgage vested in the mortgagees, Blatchford and Gates, and they then had the right to sell the same, either at public or private sale, to the mortgagor or other persons, if done in good faith. They were also told by other instructions that the lien of the first chattel mortgage was preserved by taking possession on the morning of the 5th of April, 1883, to the exclusion of judgment creditors. And by the tenth instruction they were told that if the chattel mortgage offered in evidence, dated April 5, 1883, was given to secure the purchase money of the goods and chattels described therein, and that said mortgage was duly acknowledged by Munson, and recorded in the recorder's office of Cook county, Illinois, and that the sale to Munson, the making, acknowledgment and recording of the mortgage back for the purchase money, were all done at one and the same time, and as parts of one continuous transaction, and before the mortgagees had surrendered possession of the

goods and chattels to Munson, then said chattel mortgage had priority over and was superior to the lien of the execution held by the sheriff against Munson, etc. Appellants' second, seventh and eleventh instructions are to the same effect. These instructions certainly state the law as favorably for appellants as they could ask it to be given, and fairly submitted to the jury, under the issues, the *bona fides* of the transaction of April 5, 1883, culminating in the execution and acknowledgment of the chattel mortgage of that date.

There was evidence tending to show that the mortgage of April 5, 1883, was not taken in good faith, and that the bad faith was participated in by both Gates and Munson. The points contested in the trial court, and the real issues there tried, as appears from the record, would seem to have been: First, did the pretended foreclosure and sale to Munson take place; and second, if it did, was it in good faith. No objection was made to the instructions bearing upon these questions, except the modification of the second, seventh and eleventh instructions of appellants, hereinafter considered. The finding of the jury being against appellants, and such finding having been approved by the judgment of the circuit court, and again affirmed by the Appellate Court, would be conclusive upon the issue of fact as to the *bona fides* of the sale to Munson, and of the chattel mortgage of April 5, 1883. We being precluded from a consideration of the facts, must accept the finding by the Appellate Court as conclusive.

It is, however, contended that the court erred in modifying the second, seventh, fourth and fifth instructions asked by appellants. The modification complained of, laid down the rule, that before the chattel mortgage lien could be held superior to that of the executions, the jury must find, from the evidence, that the mortgage was recorded before the mortgagees parted with the possession of the mortgaged property to Munson. These instructions were all asked upon the basis that the jury

should first find that the sale to Munson, and taking back of the chattel mortgage, was made in good faith.

We are referred to cases where mortgages have been taken to secure the purchase money of land, and holding that where such mortgage is executed as a part of the transaction of the conveyance to the mortgagor, such mortgage will take precedence of judgments against the mortgagor. In those cases this superiority of lien is given to the mortgage, not because of any equity the vendor might be supposed to have for the purchase money of the land, but upon the grounds, "the execution of the deed and mortgage being simultaneous acts, the title to the land does not for a single moment rest in the purchaser, but merely passes through his hands and vests in the mortgagee, without stopping at all in the purchaser, and during such instantaneous passage the judgment lien can not attach to the title." (*Curtis* v. *Root,* 20 Ill. 53; *Christie et al.* v. *Hale,* 46 id. 117; Jones on Mortgages, sec. 464, *et seq.*) In the conveyance of real estate, and taking back a mortgage to secure the purchase money, the title is vested in the mortgagor, subject to the mortgage delivered simultaneously with the deed. Nothing farther than the proper execution and delivery of the instruments is necessary to give validity to the mortgage. Under the Chattel Mortgage act the recording of a chattel mortgage is as essential to its validity, as against third persons, as any other element entering into the making of a valid chattel mortgage. It is a valid lien only from the time of its being filed for record, even as against purchasers and creditors with actual notice. *Frank* v. *Miner,* 50 Ill. 444; *Lemen et al.* v. *Robinson,* 59 id. 117.

The title to personal property vests immediately upon its sale and delivery to the purchaser. The fact that the mortgage is for the purchase money, or the intention of the parties that it is to be secured thereby, can give no vitality to the lien of the mortgage. As against third persons, creditors or purchasers, a chattel mortgage lien can be preserved in only two

ways: by the mortgagee retaining possession of the property, or by the recording of a properly executed and acknowledged chattel mortgage, providing that the possession of the chattels shall remain with the mortgagor. The lien of an execution in the hands of a proper officer attaches to all property which the debtor may own, or which he may acquire during the life of the execution. If, therefore, goods and chattels become the property of the execution debtor by sale and delivery to him, without the preservation of a lien for the purchase money in the form prescribed by the statute, the execution lien immediately attaches. The time when the chattel mortgage lien shall become valid, as against third persons, is fixed by the statute at the time of its being filed for record, and courts have no power to say that it shall be good or valid until the statutory requirements have been complied with.

Further discussion will not be advantageous, however, for it is, we think, evident, that in no event could the modification complained of have prejudiced appellants. An examination of the evidence in the record will show that there is no pretense that there was any delivery of possession of the property to Munson before he went to have the mortgage acknowledged, or until after his return to the hotel from the recorder's office, where he had left the mortgage for record. The finding of the jury must, in view of this evidence, have been predicated upon the evidence tending to show want of good faith in taking the chattel mortgage of April 5, 1883, and appellants could not have been injured by the modification complained of.

We are of the opinion that no such error has intervened as will authorize a reversal, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*