## THE SECOND NATIONAL BANK OF MONMOUTH

*v.*

## JAMES H. GILBERT.

*Opinion filed October 24, 1898.*

1. SALES—*bill of sale not valid as against creditors in absence of change of possession.* A bill of sale not acknowledged or recorded in accordance with the requirements of the Chattel Mortgage act is not valid, as against creditors and third persons, unless there has been a change of possession.

2. SAME—*change of possession must be actual and visible.* The possession of personal property, as agent for the vendee, by the known and previously recognized agent of the vendor, is not such a change of possession, under an unrecorded bill of sale, as constitutes notice to creditors or third persons, in the absence of other substantial and visible signs of a change of title to the property.

3. SAME—*clear proof of good faith is required where parties are near relations.* Clearer and more convincing proof of good faith is required where the parties to a bill of sale are near relations than where they are strangers.

4. ESTOPPEL—*effect where alleged vendee subsequently takes a mortgage from his vendor.* One claiming possession of personal property under an alleged bill of sale, who subsequently takes a chattel mortgage thereon from his alleged vendors, containing a statement that they were legally in possession of the property "as of their own," is estopped, as against creditors of the mortgagors, to deny the truth of such statement and set up his rights as a vendee in possession.

5. EXECUTIONS—*creditor may levy upon mortgagor's interest in mortgaged chattels.* While personal property in the possession of a *bona fide* vendee is not subject to levy under an execution against the vendor, yet where, during the life of the execution, the vendee recognizes the vendor as the true owner by accepting and recording a mortgage from him, the latter's interest as mortgagor in possession becomes subject to levy under the execution.

6. SAME—*lien of execution attaches to property acquired during its life.* The lien of an execution in the hands of a proper officer attaches to all property which the debtor owns, not exempt, and to any property which he may acquire during the life of the execution.

7. SHERIFFS—*sheriff neglecting to levy must show that property was exempt.* A sheriff refusing or neglecting to levy an execution upon personal property in possession of the debtor can discharge himself from liability for false return only by showing that the property was not subject to levy, and the burden of proof rests upon him.

*Bank of Monmouth* v. *Gilbert*, 70 Ill. App. 251, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is an action on the case, brought by the appellant against the appellee, sheriff of Cook county, charging that the appellee unlawfully refused to levy a writ of execution, issued out of the office of the clerk of the superior court of Cook county in favor of appellant; and charging that the appellee, as such sheriff, made a false return of "no property found" upon such execution. The appellee filed the plea of the general issue. The cause was submitted to the court for trial by agreement without a jury, and a finding was made against the appellant, and in favor of the appellee, and a judgment for costs was rendered against the appellant. To reverse this judgment an appeal was taken to the Appellate Court, where the judgment of the circuit court was affirmed. The present appeal is from such judgment of affirmance.

On November 9, 1893, the appellant bank recovered a judgment for $2460.85 in the superior court of Cook county against Frederick S. Eames. Execution was issued upon this judgment on November 10, 1893, and on the next day was delivered to the appellee, then sheriff of said county. This execution was returned "no property found and no part satisfied" on February 8, 1894. The judgment has never been paid.

In March or April, 1893, Frederick S. Eames and one William J. Tewksbury were interested, as partners, in the Savoy Hotel in Chicago. They owned the furniture, fixtures and other personal property in the hotel, which were worth about $15,000.00, and operated the hotel as such through a manager, named Hanna. In October, 1893, shortly before the judgment above mentioned was rendered, Tewksbury and Eames executed a bill of sale of the personal property in the hotel to Henry F. Eames,

the father of Frederick S. Eames, and the president of the
Commercial National Bank of Chicago. When the execu-
tion aforesaid came to the hands of the sheriff, Hanna,
manager of the hotel, claimed to be in possession thereof
under Henry F. Eames, and, when the sheriff went to the
hotel with the execution, Hanna made such claim to the
sheriff, and exhibited to him the bill of sale.

On December 5, 1893, while the execution was still in
the hands of the sheriff, Frederick S. Eames and William
J. Tewksbury executed a chattel mortgage to one Earl W.
Spencer, as trustee, to secure an indebtedness, claimed to
exist from Tewksbury and Frederick S. Eames to Henry
F. Eames. This chattel mortgage was acknowledged be-
fore a justice of the peace in Cook county by Tewks-
bury and Frederick S. Eames, and entered in his docket
on December 5, 1893, and was filed for record in the re-
corder's office of Cook county on December 20, 1893. The
indebtedness to Henry F. Eames is stated to have been
on account of moneys, advanced by him to his son and
Tewksbury for the purpose of buying furniture, and other-
wise fixing up the hotel. The chattel mortgage recites,
that it is given to secure an indebtedness of $12,000.00.
It contains the following provision, after describing the
furniture, and fixtures, and other personal property in
the hotel: "And the mortgagors herein for themselves
and their heirs, executors and administrators do hereby
covenant to and with said mortgagee and his successors
and assigns, that said mortgagors are lawfully possessed
of the said goods and chattels as of their own property;
that the same are free from all incumbrances." Henry F.
Eames obtained this chattel mortgage from his son and
Tewksbury upon the recommendation of his attorney,
and upon the statement of such attorney, that "it would
be safer if he took a chattel mortgage, and put it on rec-
ord, than to keep Hanna in there under the bill of sale."

The sheriff demanded of the appellant, the plaintiff in
the judgment, an indemnifying bond, and refused to make

a levy, unless such bond was furnished. On January 9, 1894, an indemnifying bond was left with the sheriff; but the sheriff, not being satisfied with the bond, never made a levy. Prior thereto, to-wit, on December 23, 1893, appellant's attorney paid a certain amount of fees to the sheriff, and stated to him that Frederick S. Eames, defendant in the execution, had property at the Savoy Hotel.

The appellant, plaintiff below, submitted to the court, to be held as law, the following proposition numbered 7: "If the defendant in the execution had an equitable interest in sufficient property in Cook county to satisfy the execution at and after the time the bond was delivered to the sheriff, or his deputy, it was the duty of the sheriff to levy the same upon such equitable interest." The court refused to hold such proposition as law, but modified the same by adding thereto the following words: "But sheriff need not levy on the personal property which had a prior mortgage lien on it." After so modifying the proposition numbered 7, the court held it as the law in the decision of the case.

The appellant also submitted to the court, to be held as the law governing the decision of the case, the following proposition numbered 8: "Henry F. Eames, by causing to be executed the chattel mortgage dated on the 5th day of December, 1893, was estopped to deny that the property therein was, on that date and before the execution of said mortgage, the property of the mortgagors therein named." The court refused to hold this proposition, as asked, as the law, but modified the same by adding thereto the following words: "But he was not estopped to show that he had a prior mortgage on the same, which was evidenced by the bill of sale." After thus modifying the eighth proposition, the court held it to be the law in the decision of the case.

Thereupon the court of its own motion held the following proposition, numbered 15, as the law governing the decision of the case, to-wit: "The court holds that

the bill of sale was, in fact, a mortgage, and that there was a delivery under the bill of sale to Mr. Hanna for Henry F. Eames, which gave Henry F. Eames a lien prior to the execution in favor of the plaintiff."

REMY & MANN, for appellant:

Putting the property in the hands of a manager, servant or clerk of the mortgagor, and allowing its use by the latter, are not such visible changes of possession as will protect the holder of an unrecorded chattel mortgage. *Brunswick* v. *McClay*, 7 Neb. 137; *Doyle* v. *Stevens*, 4 Mich. 87; *Porter* v. *Parmly*, 52 N. Y. 185.

In modifying the seventh request by adding the words, "but the sheriff need not levy on the personal property which had a prior mortgage lien upon it," the court overlooked the decisions to the effect that such a levy can be made and that a creditor has a right to have it made. *Barchard* v. *Kohn*, 157 Ill. 586; *Beach* v. *Desby*, 19 id. 617; *Pike* v. *Colvin*, 67 id. 227; *Durfee* v. *Grinnell*, 69 id. 371.

When the execution defendant is shown to have had property in his possession, the burden of proof is on the sheriff to show excuse for not levying. *Bonnell* v. *Bowman*, 53 Ill. 460; *People* v. *Palmer*, 46 id. 398.

The sheriff is bound to use due diligence to find property of the execution defendant; and as to the degree of such diligence, see *Bonnell* v. *Bowman*, 53 Ill. 460; *People* v. *Palmer*, 46 id. 298; *Dunlap* v. *Berry*, 4 Scam. 327; Freeman on Executions, secs. 252, 107.

E. R. BLISS, for appellee:

Mortgaged chattels in possession of the mortgagee are not subject to levy. *Cliffert* v. *Wilson*, 18 Ill. App. 214; *Frank* v. *Miner*, 50 Ill. 444; *Read* v. *Wilson*, 22 id. 381.

A mortgagee in possession holds the legal title. *Seaton* v. *Ruff*, 29 Ill. App. 235; *Whittemore* v. *Fisher*, 132 Ill. 256.

The transfer of mortgaged property to the mortgagee by the mortgagor at the time of the delivery of the instrument vests in the mortgagee a legal title, and the

mortgagor has no interest in the property subject to execution. *Wentworth* v. *People*, 4 Scam. 554.

Possession of mortgaged chattels may be taken without a removal of the goods, although the mortgagor be retained in the store to assist in selling and the old sign is left over the door. *Read* v. *Wilson*, 22 Ill. 376; *Hughes* v. *Stubblefield*, 21 Ill. App. 216.

The mortgagee may take possession of chattels without removing them, and may place in charge thereof an agent, even though such agent was formerly in the employ of the mortgagor. *Jenney* v. *Jackson*, 6 Ill. App. 32.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The ground, upon which the trial court found for the appellee in this case, is stated in proposition No. 15, held by the court of its own motion to be the law in the decision of the case. That proposition, considered in connection with propositions numbered 7 and 8 as modified and held to be the law by the court below, was erroneous.

It is not claimed, that the bill of sale, which is alleged to have been executed by Tewksbury and Frederick S. Eames to Henry F. Eames in the latter part of October, 1893, was an absolute transfer of the title to the personal property in the hotel. Such bill of sale is conceded to have been merely a security for the indebtedness, alleged to have existed in favor of Henry F. Eames from Tewksbury and Frederick S. Eames. Of course, the bill of sale, not having been acknowledged or recorded in accordance with the requirements of the Chattel Mortgage act, was not valid, as against creditors and third persons, unless the mortgagee, Henry F. Eames, was in possession of the property. It is claimed, that Henry F. Eames was in possession through the manager of the hotel, Hanna. The proof shows conclusively, that Hanna was manager of the hotel for Tewksbury and Frederick S. Eames before the execution of the bill of sale, and

continued to act as manager thereafter. The proof also shows, that Hanna made reports to Tewksbury and Frederick S. Eames, as well as to Henry F. Eames, after the execution of the bill of sale, and that he operated the hotel for the grantors in the bill of sale after its execution, as he had done theretofore. The grantee in the bill of sale was the father of Frederick S. Eames, the judgment debtor and one of the grantors in the bill of sale. When the known and previously recognized agent of an alleged vendor remains in possession of personal property, the appearance to the world is the same as though the vendor himself remained in possession, unless there are substantial and visible signs of a change of title. The change in the character of the possession should be indicated by such outward, open, actual and visible signs as can be seen and known to the public, or persons dealing with the property. (*Martin* v. *Duncan,* 156 Ill. 274; *Brunswick* v. *McClay,* 7 Neb. 137; *Doyle* v. *Stevens,* 4 Mich. 87; *Porter* v. *Parmly,* 52 N. Y. 185). Where parties to such a transfer are near relations, clearer and more convincing proof is required of the good faith of the transaction than when they are strangers. (*Martin* v. *Duncan, supra*). Notwithstanding the fact that the same manager, who had operated the hotel for the grantors in the bill of sale, still continued to manage it after the execution of the bill of sale, and notwithstanding the relationship, which existed between one of the grantors in the bill of sale and the grantee, the trial court found that there was an actual delivery under the bill of sale to Hanna for Henry F. Eames. We would not be disposed to disturb this finding of fact by the trial court, if the propositions held as law were correct. The apparent want of change in the character of the possession after the execution of the bill of sale, and the near relationship existing between one of the grantors therein and the grantee, are strong circumstances, tending to throw suspicion upon the *bona fides* of the transfer. Still, the

force of these circumstances may be overcome, when the proof is sufficient to show good faith and an actual change of possession.

It may be assumed, therefore, that the finding of the trial court as to a change of the possession was justified by the evidence. If there was an actual and *bona fide* change of possession, so that, after the execution of the bill of sale, Henry F. Eames was in the possession of the property in the hotel, then there is presented the case of a mortgagee of personal property, who is in actual possession of the same. Where the possession of personal property is transferred from the mortgagor in a chattel mortgage to the mortgagee therein before the rights of creditors actually intervene, the mortgagee will hold the property, and a levy cannot be made thereon. (*Martin* v. *Duncan, supra; Read* v. *Wilson,* 22 Ill. 376; *Brown* v. *Riley,* id. 46; *Frank* v. *Miner,* 50 id. 444).

So long as Eames was in possession of the property, as mortgagee under the bill of sale, the appellant could not insist upon a levy being made by the sheriff under the execution issued upon its judgment. While, therefore, the bill of sale was in force and the possession of the grantee therein continued under it, the statement in proposition No. 15, as held by the court, was correct. But the proof shows that, on December 5, 1893, while the execution of appellant was yet alive, the grantee in the bill of sale, who was in fact a mere mortgagee, accepted from Frederick S. Eames and his partner, Tewksbury, a chattel mortgage upon the property in the hotel. This chattel mortgage was duly acknowledged, and entered upon the docket of the justice of the peace, who took the acknowledgment, and was recorded in the recorder's office on December 20, 1893. After this day, to-wit, on December 23, 1893, the attorney of the appellant stated to the sheriff that the judgment debtor, Frederick S. Eames, owned property in the hotel subject to levy. We are of the opinion, that it was then the duty of the sheriff to levy upon

the property subject to the chattel mortgage. Although property embraced in a chattel mortgage cannot be levied upon while the mortgagee is in possession, yet it can be levied upon where the mortgagor is in possession, and the mortgage given by him is executed in accordance with the statute. Where a mortgagee of chattels is in possession after condition broken before the rights of creditors have attached, his title to the chattels becomes absolute at law. (*Whittemore* v. *Fisher,* 132 Ill. 243).

But, here, the mortgagee, Henry F. Eames, changed his attitude and possession. The mortgage accepted by him, which was executed on December 5, 1893, contained a statement that the mortgagors were in possession of the property, and that they were lawfully possessed thereof "as of their own property." After accepting such a mortgage, Henry F. Eames was estopped from denying the truth of the statements therein contained. It is well settled in this State that, when a chattel mortgage is properly acknowledged and recorded, a third person, who is a creditor of the mortgagor, may levy an attachment or execution upon the property in the possession of the mortgagor. (*Barchard* v. *Kohn,* 157 Ill. 579; *Beach* v. *Derby,* 19 id. 617; *Pike* v. *Colvin,* 67 id. 227; *Durfee* v. *Grinnell,* 69 id. 371; *Dunlap* v. *Epler,* 88 id. 82; *Gaar* v. *Hurd,* 92 id. 315; *Simmons* v. *Jenkins,* 76 id. 479; *Spaulding* v. *Mozier,* 57 id. 148).

It follows from what has been said, that the modifications, which the trial court made of propositions, numbered 7 and 8, were erroneous under the circumstances of this case. The modification made of proposition numbered 7 asserts, that the sheriff need not levy on personal property, which had a prior mortgage on it. This was not a correct statement of the law as to the property in the hotel after the execution of the chattel mortgage on December 5, 1893, and its record on December 20, 1893. The sheriff could have levied, and should have levied upon the property in the hotel when requested to do so

on December 23, 1893, because, at that date, Frederick S. Eames owned one-half of the furniture, subject to the chattel mortgage executed to his father. This was true, even if the turning over of the possession of the property by Henry F. Eames to his son and Tewksbury did not have the effect of letting in the lien of appellant's judgment ahead of the chattel mortgage executed upon December 5, 1893. (*Blatchford* v. *Boyden*, 122 Ill. 657). The modification made by the court of proposition numbered 8, as originally asked, was erroneous, because the execution of the chattel mortgage upon December 5, 1893, superseded the bill of sale, and operated as an abandonment of the possession held thereunder by Henry F. Eames, if there had been any such possession. It makes no difference that the judgment debtor, Frederick S. Eames, did not come into the possession of the property as owner, until after the mortgage of December 5, 1893, had been executed and recorded. This is true, because he obtained such possession as owner during the life of the execution. The law is, that the lien of a judgment in the hands of a proper officer attaches to all property which the debtor owns, or which he may acquire during the life of the execution. The lien attaches to property acquired by the judgment debtor at any time while the execution is in force. (*Blatchford* v. *Boyden, supra;* 1 Freeman on Executions, sec. 197; *Shaffner* v. *Gillmore*, 3 W. & S. 438).

A sheriff, failing to levy on personal property in the possession of the judgment debtor, can only discharge himself from liability by showing that the property was not subject to levy; and the burden of proof is upon the officer. Where he neglects to levy upon personal property in possession of the defendant, he must either show that the property was exempt from execution, or must establish such facts as justify his failure to make the levy. (*Bonnell* v. *Bowman*, 53 Ill. 460; *People* v. *Palmer*, 46 id. 398; *Dunlap* v. *Berry*, 4 Scam. 327; 1 Freeman on Executions, secs. 107, 200; 2 id. sec. 252).

There is much discussion in the briefs of counsel upon the questions, whether the circumstances justified the sheriff in demanding an indemnifying bond as a condition precedent to making a levy, and whether, if he was justified in calling for such a bond, the bond presented to him was such a sufficient security as the statute requires. (Rev. Stat. chap. 77, sec. 43; 2 Starr & Curt. p. 1408). But we do not deem it necessary to discuss, or pass any opinion upon, these questions, as the court below based its finding in favor of the appellee solely upon the theory that, after the mortgage of December 5, 1893, was executed, the previous bill of sale was still in force, and the grantee therein was still in possession of the property as mortgagee.

For the reasons above stated, the judgments of the Appellate Court and of the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*