## E. F. JOHNSON *v.* RICHARD BEATTIE.

### October Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

#### Opinion filed February 6, 1915.

*Statute of Limitations—Sheriffs and Constables—Nonfeasance and Misfeasance—Actions Against—Accrual of Right of Action.*

It is the nonfeasance or misfeasance of a public officer, directly affecting the rights of others, and not the resulting damage, that constitutes the cause of action against him.

In the absence of fraud, the breach of duty by a public officer, which directly affects the rights of another, at once gives the latter a cause of action, and therefore starts the running of the Statute of Limitations, even though the whole extent of the injury may not be discovered until later.

But there is a distinction between official misconduct that directly affects the rights of others and conduct that is harmless in a legal sense unless and until certain contingencies arise; in the former case the cause of action is at once complete, while in the latter it is the injury itself that is consequential.

In an action against a sheriff for the default of his deputy, where it appeared that in 1909, plaintiff caused to be issued a writ of attachment in his favor and delivered it to the deputy for service, but the deputy failed to return it; that there was a prior attachment on the property in a suit wherein the defendant therein had judgment in 1913; that owing to the failure of the deputy to return plaintiff's writ of attachment, another creditor obtained priority over plaintiff, his cause of action arose at the time of the deputy's failure seasonably to return the writ, and the four-year limitation prescribed by P. S. 1556, then began to run, notwithstanding plaintiff's damages could not then be determined because of the pendency of the prior attachment.

CASE against a sheriff for the default of his deputy. Plea, the general issue and the Statute of Limitations. Replication to the plea of the Statute of Limitations relying on the pendency of a prior attachment at the time of the deputy's failure to re-

turn plaintiff's writ. Heard on defendant's demurrer to that replication, at the April Term, 1914, Essex County, *Butler,* J., presiding. Demurrer sustained and replication adjudged insufficient, to which plaintiff excepted. Cause passed to the Supreme Court before trial on the merits. The opinion fully states the case.

*Carney & Blake* for the plaintiff.

*C. R. Powell,* and *Simonds, Searles & Graves* for the defendant.

TAYLOR, J. This is an action on the case against the defendant as sheriff of Essex County for the default of one of his deputies in failing to make return of a writ of attachment sued out by the plaintiff against one Norcross. As appears from the declaration the writ was an ordinary writ of attachment issued Jan. 2, 1909, and returnable to Essex county court within 21 days from the date thereof. The writ was delivered to defendant's deputy for service on the day of issue and was served by him by attaching, as the property of said Norcross, certain bank stock and all of said Norcross' real estate in Brighton. The property attached was of sufficient value to secure the plaintiff's claim. Service of the writ was completed by giving said Norcross the required notice; but said deputy did not make return of the writ as commanded and the same was never returned into court, whereby the plaintiff lost the benefit of said attachment. After the attachment on plaintiff's writ and before the return day thereof, the same property was attached in the suit of one Clara A. Robinson against said Norcross and later sold on execution to satisfy a judgment in her favor.

The defendant pleaded the general issue and Statute of Limitations. Plaintiff replied to the latter plea that he (plaintiff) was a subsequent attaching creditor; that all of the real estate attached on his writ against Norcross was subject to a prior attachment for more than its full value on a writ in favor of one Hattie Willard against said Norcross; that said prior attachment remained in force until Feb. 12, 1913, when the suit of *Willard* v. *Norcross* was ended by a final judgment for the defendant; that as soon as he learned of defendant's default he sued out a new writ and caused all of said real estate to be at-
33

tached thereon, but said attachment being subsequent to that of said Willard, he was by law precluded from levying any execution upon said real estate until the termination of the suit of said Willard; that said Norcross had no other property from which an execution could have been satisfied; and so the plaintiff says he was not damaged and had no cause of action until the termination of said suit of *Willard* v. *Norcross.*

The defendant demurred to the replication and the county court sustained the demurrer and adjudged the replication insufficient. An exception was allowed to the plaintiff and the cause passed to this Court before trial. The only question argued here relates to the time when the plaintiff's cause of action accrued. As a bar to the action the defendant relies upon P. S. 1556 which provides: "Actions against sheriffs for the misconduct or negligence of their deputies shall be commenced within four years after the cause of action accrues, and not after." This suit was commenced Jan. 16, 1914, more than four years after the alleged default, and so is barred unless, as the plaintiff contends, the cause of action did not accrue until the termination of the suit of *Willard* v. *Norcross* on Feb. 12, 1913, when the real estate was released from the prior attachment.

It must be admitted that the particular wrong doing from which the plaintiff's injury accrued was the failure of the deputy to return the writ. The plaintiff's claim is that, though the nonfeasance did then take place, the injury was consequential and did not arise until the prior attachment was dissolved by a final judgment in favor of Norcross in that suit. His claim in its last analysis comes to this: that the neglect of the defendant's deputy was in itself innocent in a legal sense but that consequential injury accrued to him therefrom; in other words, his contention is that the consequential injury and not the officer's nonfeasance furnishes the basis of the action. But such is not the case alleged in the declaration. It will be noted that the *gravamen* of the action—the grievance complained of— is the deputy's failure to return the attachment writ, and it is not suggested in argument that the declaration is framed as an action on the case for consequential damages.

The question is not wholly new in this State, although it has arisen hitherto on default of an officer in service of final process; but in general the same liabilities attach to an officer

in serving mesne process, (note 95 Am. St. Rep. 105 and cases cited), and no apparent reason exists for a different rule as to the time when an action accrues for default of official duty in one case than in the other. In *Hall* v. *Tomlinson,* 5 Vt. 228, the action was for insufficient return of an execution. The plaintiff had been ejected from land acquired through a defective levy made by the defendant, after the expiration of more than six years from the time of the defendant's misfeasance. The plaintiff's claim was that her cause of action did not accrue, or was not complete, until the recovery had against her in the action of ejectment. The court held that the defendant neglected his duty when he failed to make a sufficient levy and return on the execution and that the cause of action was complete against him at that time; that the insufficiency of the levy to pass title to the plaintiff and the illegality of the defendant's proceedings were then as apparent as they are now; that she was under no necessity of waiting until the validity of the levy was tried in the action of ejectment, but might commence her suit immedi-ately; and that the action was barred by the statute. In *Bell* v. *Roberts,* 13 Vt. 582, the plaintiff sued the defendant as sheriff for the negligence of one of his deputies in making a defective levy of an execution in favor of the plaintiff. The defect in title due to the misfeasance of the deputy had been cured, while the action was pending, by the lapse of time under the statute then in force for quieting title. The trial court directed a verdict for the defendant. In reversing the judgment this Court held that the action accrued against the sheriff immediately on the breach of duty by his deputy; that under the statute the creditor must be at the expense of taking proceedings in court to correct the levy, or must lay out of the use of the land two years that his title might become quieted; that the neglect of the officer was not *damnum absque injuria;* and that the plaintiff was entitled to recover whatever damages he suffered from the breach of the officer's duty.

These cases are in line with the general rule, supported by the decided weight of authority, that the breach of duty by a public officer which directly affects the rights of an individual gives rise at once to a right of action, even though the entire extent of the injury may not be discovered until later. *McKay* v. *Coolidge,* (Mass.) 105 N. E. 455; *Wilcox* v. *Plummer's Exrs.,* 4 Pet. 172, 7 L. ed. 821; *Betts* v. *Norris,* 21 Me. 314, 38 Am. Dec.

264; *Owen* v. *Western Savings Bank,* 97 Pa. St. 47, 39 Am. Rep. 794; *Kerns* v. *Schoonmaker,* 4 Ohio 331, 22 Am. Dec. 757; *Caesar* v. *Bradford,* 13 Mass. 169; *Miller* v. *Adams,* 16 Mass. 456; *Peck* v. *Hulburt,* 46 Barb. 559.

*Wilcox* v. *Plummer's Exrs.* and *Betts* v. *Norris* are leading cases on this question. The former case was presented by distinguished counsel, Wirt arguing for the plaintiff and Webster for the defendant. The suit was to recover for a loss sustained by reason of the neglect of defendants' testator while acting as an attorney-at-law. A promissory note was placed in his hands for collection. Through his negligence, which need not be detailed, the plaintiff lost the proceeds of the note. The only question in the case was whether the Statute of Limitations ran from the time of the attorney's neglect, in which case the action would be barred, or from the time that the damage developed or became definite, which was within the statutory period. The court said that the question was not then (1830) an open one, and held that it was not a case of consequential damages in the technical acceptation of those terms; that the question was, when might the action have been instituted, saying that it might have been sustained immediately; and that the action was therefore barred by the Statute of Limitations. Speaking of the uncertainty as to the matter of damages when the action is commenced immediately the court said: "Perhaps in that event no more than nominal damage may be proved and no more recovered; but on the other hand it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear that the damage is not the cause of action."

*Betts* v. *Norris* was an action for the nonfeasance of a deputy sheriff in not attaching sufficient property on mesne process. The defendant relied upon the Statute of Limitations. The action was commenced more than the statutory period after the alleged nonfeasance but within the time after the return of the execution in the attachment suit unsatisfied. The plaintiff claimed, as in this case, that the cause of action did not accrue at the time of the officer's default. In a carefully reasoned opinion that leaves little further to be said by way of argument the court held that the cause of action accrued on the return of the writ and that no substantive cause of action could be considered as having arisen thereafter.

Mr. Freeman in his note to *Betts* v. *Norris,* 38 Am. Dec. 270, in which he cites many cases, says: ''The rule of law, now well recognized, is that in case of official or professional nonfeasance or misfeasance, the cause of action accrues at the time of such misconduct and the Statute of Limitations then begins to run, and not from the time of consequential injury.'' He qualifies this by saying: ''Of course this doctrine can be applied only in the absence of any attempted concealment of the party's misconduct. Fraudulently keeping the facts from the knowledge of the injured person introduces an entirely different question, which necessitates the adoption of an entirely different rule in regard to the running of the statute. But in instances where there is no fraud, causes of action for official or professional negligence arise at the time of breach of duty and not when the consequential damages are felt.''

The rule that the nonfeasance or misfeasance of a public officer, and not the resulting damage, constitutes the cause of action has long been the law of England. It is said in *Wilcox* v. *Plummer's Exrs.* that this was ruled as early as 20th Elizabeth in *The Sheriffs of Norwich* v. *Bradshaw,* 1 Croke 53. See also *Ravenscroft* v. *Eyles,* 2 Wilson 294; *Godding* v. *Ferris,* 2 H. Bl. 14; *Battley* v. *Faulkner;* 3 B. & A. 288; *Granger* v. *George,* 5 B. & C. 149. So far as has come to our attention the rule is applied throughout the United States excepting in Connecticut, Colorado and Tennessee. It was held in *Bank of Hartford County* v. *Waterman,* 26 Conn. 324 and followed by *People* v. *Cramer,* 15 Colo. 155, 25 Pac. 302, both considerably relied upon by the plaintiff, that no legal wrong exists in case of official misfeasance until the damnifying consequences of the wrong are felt; and so that the Statute of Limitations does not begin to run until the resulting damages accrued, upon the theory that non-performance of an official duty is not necessarily a legal injury. The court reasoned that the duty violated being primarily a duty to the public it was only when its consequences are the invasion of an individual right that it becomes a proper subject of redress by the injured party. The court recognized the prevailing rule when it said: ''Whenever the injury, however slight, is complete at the time of the act the statutory period commences''; but held for that case that the wrong complained of was not in itself enough to constitute a cause of action, and that no right to sue became lodged in the plaintiff until a

.certain consequence resulted from the breach of duty by the officer.

In *People* v. *Cramer* it was held that the creditor's right was the judicial collection of his debt, or enforcement of such other legal redress as the law may authorize; and that, if the negligence or misconduct of the officer in no way prevents or retards the vindication of this right, no legal injury exists and no right of action accrues. It would follow that, if the misconduct hindered the vindication of the right, legal injury would exist and a right of action therefor accrue.

While the results reached in these cases may not accord with the decisions elsewhere, we apprehend that the departure is not due so much to divergent views of general principles as to their application to the case in hand. The prevailing rule recognizes a distinction between official misconduct which directly affects the rights of others and conduct that is harmless in a legal sense unless and until certain contingencies arise. In the former, the cause of action is at once complete, involving possibly consequential damages; while in the latter, it is the injury itself that is consequential. The disagreeing cases are apparently ruled as belonging to the latter class. *State* v. *McClellan*, 113 Tenn. 616, 85 S. W. 267, 3 Ann. 992, follows the doctrine of *Bank of Hartford County* v. *Waterman.*

Our own cases aside, we regard the prevailing rule as based on principle and sound reasoning and we find nothing in plaintiff's argument to justify a departure from the early decisions of this Court. The case at bar presents features not found in many of the cases, affording additional reasons for the application of the rule. The duty which the deputy is alleged to have neglected was one directly and instantly affecting the rights of the plaintiff and the default occasioned present substantial injury. The plaintiff lost his attachment on the bank stock, which was not covered by the prior attachment, as well as the expense of instituting and prosecuting his suit up to that time. If the plaintiff had commenced this action immediately after the return day of his writ against Norcross, could the defendant have successfully relied upon a claim that the suit was prematurely brought, so far as damage already suffered was concerned? If not it is apparent that the statute commenced to run from that time, for it is well settled that the cause of action accrues from the time the plaintiff can first maintain a suit.

*Lycoming Fire Ins. Co.* v. *Batchelder Bros.,* 62 Vt. 148, 19 Atl. 982; *Dawley* v. *Wheeler,* 52 Vt. 574. The fact that the full extent of his injury was not fixed and certain, nor capable of being immediately ascertained would not postpone his right to sue for the wrong done him nor toll the Statute of Limitations. *McKay* v. *Coolidge, supra,* and cases there cited.

Whatever difficulty there is arises from the uncertainty as to the full extent of the plaintiff's damages until the happening of subsequent contingencies, but, as said in *Betts* v. *Norris,* the right of action exists apart from such contingencies. The ascertainment of the actual damage is but an incident of the right of action. The consequences in such a case are merely aggravating circumstances enhancing the damages of a legal injury already suffered. In this regard it is not unlike the case of future or special damage arising from assault and battery or other tortious act. In all such cases, the damage is a result and not a cause. It might be found convenient to continue the case until it could be ascertained to what extent the plaintiff had been injured by the officer's wrong doing; but, because until this had been done it might be inconvenient to establish the damages, could form no ground to question the plaintiff's cause of action.

As indicated by Mr. Freeman in the note quoted above, the rule that the Statute of Limitations begins to run as a general rule from the act done, is subject to the exception that it does not run in favor of a defendant who, by fraudulent practices, has kept the plaintiff in ignorance of his rights until discovery of the fraud. Notes 55 Am. St. Rep. 516 and 99 Am. St. Rep. 248 and cases cited. *Lightner Mining Co.* v. *Lane,* 161 Cal. 689, 120 Pac. 771, Ann. Cas. 1913 C. 1093.

The decisions of this Court cited by the plaintiff are in accord with the views herein expressed. *Hill* v. *Pratt,* 29 Vt. 119, does not hold as claimed that the cause of action depends upon there being nothing forthcoming to satisfy plaintiff's claim at the time of execution. That was an action for failure to attach property as commanded. It appeared that at the time the writ was served the debtor had attachable property, which fact the officer could have discovered in the exercise of reasonable diligence; but at the time of judgment the debtor had become insolvent and the debt valueless. The court held that in the circumstances it was the duty of the officer to secure the

debt by. attachment of property, if the debtor had attachable property in its possession which might with reasonable diligence have been attached, and that for neglect in that matter the defendant was liable for the damages sustained. It was also held that it was not necessary to issue execution on the judgment to fix the officer's liability, as the officer was not charged with neglect in not keeping the property attached to be applied on the execution, but the ground of the complaint was his neglect in not making any attachment. The effect of this holding is that the liability of the officer did not depend upon subsequent contingencies.

*Briggs* v. *Taylor,* 35 Vt. 57, was an action against the defendant as sheriff for the neglect of a deputy in the care of property attached by him on process against the plaintiff. The case was tried while the attachment suit was still pending. The question for decision was whether the plaintiff as general owner of the property could maintain an action for the officer's neglect in the care thereof while the attachment was still in force. The exception was to the refusal of the trial court to direct a verdict for the defendant on the ground that the plaintiff did not have any cause of action at the time the suit was commenced. It was held that an injury to the property happening through the officer's negligence in caring for it was an injury to the debtor in any event, as the loss would finally fall on him, whether the property was restored to him or sold to pay his debts. Judge Aldis who wrote the opinion uses the language quoted by the plaintiff by way of argument. It is not necessary to consider whether it is mere dictum or whether it correctly states the rule as to the creditor's right to sue for damage due to neglect in the care of attached property, for treating it as a decision, it amounts to no more than saying that in the case of *such* official negligence the creditor's injury is remote and consequential in the technical sense of the term.

*Munger* v. *Fletcher,* 2 Vt. 524; *West River Bank* v. *Gorham,* 38 Vt. 649, and *Wolcott* v. *Gray,* Brayt. 91 shed no light on the question. The effect of these decisions is that the defendant may defeat the suit by showing that plaintiff has suffered no injury by the defendant's wrongful act. It is unnecessary to decide whether the burden of showing injury rests upon the plaintiff or whether want of injury is a matter of defence. In the case at bar the facts alleged show present

injury and not a state of facts, harmless in themselves, from which, in connection with subsequent circumstances, injury follows. The decisions upon this question are conflicting. It is held in some jurisdictions that the plaintiff would make out a *prima facie* case by proving the default relied upon and the amount of his claim, (35 Cyc. 1640 and cases cited), and that the defendant may show certain facts in mitigation of damages. *Second Nat. Bank* v. *Gilbert*, 174 Ill. 485, 51 N. E. 584, 66 Am. St. Rep. 306; notes, 30 Am. Dec. 487 and 72 Am. St. Rep. 160. In *Hall* v. *Brooks*, 8 Vt. 485, 30 Am. Dec. 485 this Court, holding that where an officer has final process put into his hands which he refuses or neglects to receive (serve) thereby made the debt his own and was liable in damages to the full amount of the debt, said: "In actions for escape on mesne process and for refusal to serve mesne process, as the debt cannot be transferred to the officer by the judgment, the rule of damages, claimed by the defendant * * * has been adopted." The claim of the defendant was the right to show in mitigation that the debtor was at the time of the neglect sued for wholly unable to respond. The rather harsh rule laid down in *Hall* v. *Brooks* and followed in several other cases is apparently restricted by the holding in *Kidder* v. *Barker*, 18 Vt. 454, that in case of neglect to return an execution the officer was liable for nominal damages "and for so much more as have been suffered"; although in the latter case the court remarked that they did not see that the case was fairly comparable to *Hall* v. *Brooks*.

The result is that the replication is not sufficient to avoid the plea of the Statute of Limitations and defendant's demurrer was properly sustained.

*Judgment affirmed and cause remanded.*