[Civil No. 3217.   Filed March 21, 1933.]

[20 Pac. (2d) 289.]

VIC S. GRIFFITH and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation, Appellants, v. STATE OF ARIZONA, Acting for Itself and on Behalf of Pima County, Arizona, Appellee.

Messrs. Richey & Richey, Messrs. Alexander, Silverthorne & Van Spanckeren, Mr. Robert McMurchie and Mr. W. L. Barnum, for Appellants.

Mr. Arthur T. LaPrade, Attorney General, Mr. Clarence E. Houston and Mr. Wm. G. Hall, for Appellee.

LOCKWOOD, J.—This is an action by the state of Arizona, acting for itself and on behalf of Pima county, against Vic S. Griffith and Fidelity and Deposit Company of Maryland, a corporation, as defendants. There were three other suits of the same general nature filed by the state at the same time which have also been appealed, and it is agreed by the parties that the legal points involved in each of these appeals are identical, and that the judgment in the present case shall control that in the other three referred to.

We state the facts necessary for a determination of the issues as follows: Defendant Griffith during the years 1921 to 1928, inclusive, was the county assessor of Pima county, one John Pfeiffer being his deputy, while the corporations involved in all the actions were the sureties on Griffith's official bonds. On the 4th of August, 1928, Pima county brought a suit in the superior court, being cause No. 11471, against Griffith, Pfeiffer, Maryland Casualty Company of Baltimore, and the Fidelity and Deposit Company of Maryland, to recover from Griffith and Pfeiffer some $36,000 of money belonging to Pima county, which it was alleged they had received in their official capacities and fraudulently converted to their own use, and from the Maryland Casualty Company some $11,-000 and the Fidelity and Deposit Company $5,000, on the penalties of their respective bonds. To this complaint the defendants demurred on four grounds: First, that there was a misjoinder of the parties, second, a misjoinder of causes of action, third, that the complaint failed to state a cause of action, and, fourth, that it showed affirmatively on its face that it was barred by the statute of limitations. On the twenty-seventh day of April, 1929, the court entered an order sustaining the demurrers generally without indicating any particular one, and granted plaintiff thirty days within which to amend its complaint, and, the plaintiff having failed to amend, the following judgment was entered on July 2d:

''An order having been entered in this action on the 27th day of April, 1929, sustaining the demurrers of the defendants in said above entitled action to plaintiff's complaint herein and giving the plaintiff leave to amend its complaint within thirty days, and the plaintiff having failed within said thirty days, or at all, to amend its said complaint, and more than thirty days having elapsed since said order was entered, and plaintiff having failed to amend its com-

plaint as by said order allowed, now on motion of counsel for the defendants,

"It is ordered and adjudged that the complaint herein of the plaintiff be and the same is hereby dismissed and that the defendants have and recover their costs herein incurred against the plaintiff taxed at $——."

A short time thereafter this action was brought by the state. The defendants demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, and then set up three defenses in bar of the action: First, a general denial, second, that the action was barred by the judgment of dismissal above set forth, and, third, that the money involved, if any was converted, was the property of Pima county, and that the action was barred by the statute of limitations. Demands for a bill of particulars were made, and in response thereto it was furnished. The general demurrer was overruled, and the case proceeded to trial before the court sitting without a jury, evidence being introduced on behalf of plaintiff and defendant. The court made findings of fact and conclusions of law, but failed to make any findings on the pleas of *res judicata* and statute of limitations raised by the answer, and defendants thereafter requested additional findings on those points, which were refused by the court. Judgment was later rendered in favor of plaintiff, and, after the usual motions for new trial had been overruled this appeal was taken.

There are some eight assignments of error, one containing many subdivisions, but we shall consider them in accordance with the legal propositions raised thereby. The first is that the present action was barred by the judgment rendered in cause No. 11471 above referred to. It is a generally accepted doctrine that, if a demurrer which goes to the merits of a case be sustained, and the action be then dismissed by the court, it is a bar to a subsequent similar action be-

tween the same parties. *Wilson* v. *Lowry*, 5 Ariz. 335, 52 Pac. 777; 34 C. J. 798, and note. There is, however, an exception to this rule. If the demurrer goes to the form of the action, to a defect of pleading, or to the jurisdiction of the court, a judgment of dismissal thereon will not preclude further litigation on the merits of the controversy in a proper case. *Bissell* v. *Spring Valley Township*, 124 U. S. 225, 8 Sup. Ct. 495, 31 L. Ed. 411; *Hughes* v. *United States*, 4 Wall. (71 U. S.) 236, 18 L. Ed. 303; *Motes* v. *Gila Valley etc. Ry. Co.*, 11 Ariz. 39, 89 Pac. 410.

It has also been held that, where a demurrer goes both to defenses of form and to the merits, an order sustaining the demurrer generally and a judgment thereon which does not designate between the two grounds will be presumed to rest on that of form rather than the merits. *Bissell* v. *Spring Valley Township, supra; Motes* v. *Gila Valley etc. Ry. Co., supra; Chrisman's Admx.* v. *Harman*, 29 Gratt. (Va.) 494, 26 Am. Rep. 387; *Griffin* v. *Seymour*, 15 Iowa 30, 83 Am. Dec. 396.

Defendants apparently rely chiefly upon the case of *Coates* v. *Santa Fe, P. & P. R. R.*, 15 Ariz. 25, 135 Pac. 717. In that case plaintiff filed a complaint alleging that he had received certain personal injuries while in the employ of defendant and sought damages therefor. Defendant pleaded in bar that plaintiff had for a good and valuable consideration acknowledged full satisfaction of the cause of action, and, the attorney for plaintiff confessing the truth of the plea in bar, the court ordered that the cause be dismissed with prejudice. Notwithstanding this, plaintiff later commenced another cause of action based on the same facts, to which defendant pleaded the judgment of dismissal in the former action in bar. In discussing the question we said:

"A decree of dismissal, 'unless made because of some defect in the pleadings, or for want of juris-

diction, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, is a final determination. Where words of qualification, such as "without prejudice," or other terms indicating a right or privilege to take further legal proceedings on the subject, do not accompany the decree, it is presumed to be rendered on the merits.' "

It is claimed that, since the judgment in case No. 11471 does not contain the words "without prejudice" or others carrying the same meaning, the presumption is that the ruling was on the merits. It will be seen that the facts in the Coates case are quite different from those in No. 11471, and that there was no question of a defect in pleading, parties, or jurisdiction. We think the case not in point on the precise question involved.

Plaintiff urges that the rule laid down in *Motes* v. *Gila Valley R. Co., supra,* governs. Motes brought suit against defendant railroad for damages for injuries alleged to have been sustained by his minor son. Defendant demurred on four grounds, the first that the complaint did not state a cause of action, and the other three raising the questions of misjoinder, defect of parties, and legal capacity to sue. The demurrer was sustained generally without indicating on what grounds, and leave granted to amend. Plaintiff then filed an amended complaint seeking to recover in his own behalf for medical attendance and loss of his son's services. A demurrer was interposed to the second complaint on the ground that it set up a new cause of action which was barred by the statute of limitations. This demurrer was sustained, and judgment entered for a dismissal of the complaint. The case was appealed to this court which affirmed the judgment. Later, the minor son, having become of age, brought suit in his own right for injuries arising out of the same acts involved in the first case. Defendant pleaded in bar the judg-

ment sustaining the demurrer to the complaint filed by the plaintiff's father in the first case. When the matter came before us, we said that the issue was whether the sustaining of the demurrer to that complaint, which, as we have stated, was an entirely different cause of action from that contained in the amended complaint, was a bar to the later action, and continued:

" . . . It is undoubtedly true that where the merits of an action are determined, a final judgment on a demurrer will be conclusive as to a future action, but where the demurrer goes to the form of the action, to a defect of pleading, or to the jurisdiction of the court, such judgment is not a bar, and will not preclude further litigation on the merits of the controversy in a court of competent jurisdiction upon proper pleadings; and the rule is that where a demurrer goes both to defects of form and also to the merits of a judgment thereon not designating between the two grounds (the record not disclosing otherwise) will be presumed to rest upon the former. [Citing cases.] In the case at bar three of the four grounds of demurrer went only to defects of form, and from the record it cannot be ascertained upon which of the grounds the court sustained the demurrer, nor was evidence outside the record offered to so show. Therefore it will be presumed that the demurrer was sustained on the technical ground set up by the defendant. . . . "

Defendants urge that in the Motes case no judgment of dismissal was rendered upon the order sustaining the first demurrers, and that the case is not in point. We think, however, that the principle laid down therein is sound and applicable herein, and, unless it affirmatively appears from the record of case No. 11471 that the demurrer to the merits must necessarily have been determined against the plaintiff, the previous adjudication is no bar either as against Pima county or the state.

Does that record present such a situation that it shows the complaint was so defective that it was beyond the possibility of amendment? The only point on which this might be urged to be true is that of the statute of limitations. Defendants by their demurrer on that point claim that the causes of action set forth in the complaint were barred by the provisions of subdivision 3, paragraph 709, Revised Statutes of Arizona of 1913 (Civil Code). This subdivision reads as follows:

"709. There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, all actions or suits, in court, of the following description: . . .
"(3) An action upon a liability created by statute, other than a penalty or forfeiture."

It is obvious on an examination of the complaint that the amount of money alleged to belong to Pima county which it was claimed Griffith and Pfeiffer had fraudulently converted to their own use was taken before the fourth day of May, 1927, and the action was not brought until the fourth day of August, 1928, more than a year thereafter. Was the action then upon a liability created by statute? It was based, by the terms of the complaint, on the failure to account for or pay over to Pima county the money collected by the individual defendants in their official capacity, and the condition of all the bonds sued on is that the principal "shall well, truly and faithfully perform all official duties required of him by law." Paragraphs 194 and 4872, Rev. Stats. Ariz. 1913 (Civ. Code). Obviously, the liability on which the action was brought was created by statute. *Wonnacott* v. *County of Kootenai,* 32 Idaho 342, 182 Pac. 353. Since, therefore, all the money involved in the action was alleged to have been converted more than a year prior to the time it was brought, unless there is some exception to the rule, the statute of limitations had

run at least as against Pima county. The complaint, however, alleges not merely that the money was converted, but that it was done fraudulently and in substance in the breach of a trust. It is generally held that, where a trustee has fraudulently concealed the facts from which a cause of action to recover money received by him in his official capacity arises, the statute of limitations does not begin to run until the discovery by the plaintiff of the facts which gave him a right of action, and that the same rule applies to his bondsmen. *Bradford* v. *McCormick*, 71 Iowa 129, 32 N. W. 93; *McMullen* v. *Winfield B. & L. Assn.*, 64 Kan. 298, 67 Pac. 892, 91 Am. St. Rep. 236, 56 L. R. A. 924; *State ex rel. Barringer* v. *Hawkins*, 103 Mo. App. 251, 77 S. W. 98; *Moore* v. *Waco Building Assn.*, 19 Tex. Civ. App. 68, 45 S. W. 974; *Skagit County* v. *American Bonding Co.*, 59 Wash. 1, 109 Pac. 197; *Raymond* v. *Schriever*, 63 Neb. 719, 89 N. W. 308; *Coxe* v. *Huntsville Gas Light Co.*, 106 Ala. 373, 17 So. 626; *Eising* v. *Andrews*, 66 Conn. 58, 33 Atl. 585, 50 Am. St. Rep. 75. It is true that in the earlier cases this exception is sustained only when the suit is an equitable one, but the later decisions tend to hold that the doctrine is equally applicable to actions at law. We have discussed the question of fraudulent concealment of a cause of action very recently in the case of *Tom Reed Gold Mines Co.* v. *United Eastern Min. Co.*, 39 Ariz. 533, 8 Pac. (2d) 449, and have followed the rule last stated.

Counsel for defendants in support of their contention have cited the cases of *Ada County* v. *Ellis*, 5 Idaho 333, 48 Pac. 1071; *Wonnacott* v. *Kootenai County*, 32 Idaho 342, 182 Pac. 353; *State* v. *Davis*, 42 Or. 34, 71 Pac. 68, 72 Pac. 317; *People* v. *Putnam*, 52 Colo. 517, 122 Pac. 796, Ann. Cas. 1913E 1264; *Steinbrenner* v. *Elder*, 80 Mont. 395, 260 Pac. 725; *Gallatin County* v. *United States Fidelity & Guaranty Co.*, 50 Mont. 55, 144 Pac. 1085; *Canyon County* v.

*Moore,* 34 Idaho 732, 203 Pac. 466; *Norton* v. *Title Guaranty & Surety Co.,* 176 Cal. 212, 168 Pac. 16; *Peterson* v. *Title Guaranty & Surety Co.,* 35 Cal. App. 103, 169 Pac. 239; *Hellwig* v. *Title Guaranty & Surety Co.,* 39 Cal. App. 422, 179 Pac. 222; *Cloud County* v. *Hostetler,* 6 Kan. App. 286, 51 Pac. 62. We have examined and carefully analyzed all of these cases. The first six hold that the action involved is governed by the one-year statute of limitations, but say nothing as to whether the fraudulent concealment by the defendant prevents the statute of limitations from commencing to run until the discovery of the liability. The California and the last-cited Idaho cases do indeed hold that, in actions on liabilities created by statute, the running of the statute of limitations commences with the actual defalcation, regardless of the time of discovery. These decisions, it is evident from reading the cases, are based upon the theory that, since there is a specific exception in the statute applying to actions based upon fraud to the effect that the statute does not run till the discovery of the fraud, it must be assumed the legislature did not intend the exception to apply to any form of action. With all due respect to the eminent courts which have adopted this rule, we are of the opinion that it is unsound in principle. We think the true rule is well stated in the dissenting opinion in *Canyon County* v. *Moore, supra,* wherein it is said:

"The case of *McMullen* v. *Winfield Building, etc., Assn.,* 64 Kan. 298, 67 Pac. 892, 56 L. R. A. 924, 91 Am. St. Rep. 236, quoting with approval *Bailey* v. *Glover,* 21 Wall. 342, 22 L. Ed. 636, and *Lieberman* v. *First Nat. Bank of Wilmington,* 2 Pennewill 416, 45 Atl. 901, 48 L. R. A. 514, 82 Am. St. Rep. 414, and also numerous other cases, clearly sustains the proposition that, where a trust relation exists, if fraud enters into the transaction giving rise to the cause of action, *even though the cause of action is not based upon such fraud,* the statute is tolled until the fraud

is discovered. The case of *Atchison, etc., R. Co.* v. *Atchison Grain Co.*, 68 Kan. 585, 75 Pac. 1051, 1 Ann. Cas. 639, relied upon by appellants, has been distinguished on this precise point in the case of *Lightner Mining Co.* v. *Lane*, 161 Cal. 689, 120 Pac. 771, Ann. Cas. 1913C 1093, where the court said:

" 'That the statute of limitations makes no exception in actions at law in regard to fraud or fraudulent concealment, and that the courts are bound by the terms of the statute and cannot add to it or declare an exception which would nullify it in its application to cases properly embraced in its terms. . . . Where one betrays a trust and appropriates trust property to his own use, it is called a fraud. The injured party allows the other to have the possession and the opportunity to convert the property secretly, because of the faith and confidence in the wrongdoer. . . .

" 'If (it appears that) fraud enters into a cause of action, . . . the cause of action will not be deemed to have accrued until the facts are discovered, regardless of the form or character of the action.'

"This same principle is also supported by *Valley Abstract Co.* v. *Page*, 42 Okl. 365, 141 Pac. 416; *Waugh* v. *Guthrie Gas, etc., Co.*, 37 Okl. 239, 131 Pac. 174, L. R. A. 1917B 1253; *Johnson* v. *Beattie*, 88 Vt. 512, 93 Atl. 250 [L. R. A. 1915D 1163]; *Allen* v. *State*, 6 Kan. App. 915, 51 Pac. 572; *Skagit County* v. *American Bonding Co.*, 59 Wash. 1, 109 Pac. 197; *Norton* v. *Title Guaranty & Surety Co.*, 176 Cal. 212, 168 Pac. 16, is clearly distinguishable as to the application of the above rule for the reason that there the trust relationship did not exist, and this point was not raised or considered by the court.

"The test, therefore, is not whether the action is one of fraud, but whether the action seeks relief from or on account of fraud or mistake in the original transaction. . . .

"The assessor was charged with the duty in the first instance of keeping his books, collecting this money, and turning it over to the county treasurer, or other proper authority. If he knew that the books were incorrect, and that he had collected money which he had not turned over, and did not tell the county commissioners, he was guilty of actual concealment

and fraud. If he kept the books in such a manner that he did not know whether the money which he had collected belonged to him or to the county, and as a matter of fact he had received money which was not his and which he should have turned over to the county, but converted the same to his own use, this was a breach of his duty and was, as to the county, a fraud or mutual mistake. . . .

"Where a public official in a fiduciary capacity receives public moneys and appropriates the same to his own use, and the reports submitted by him and required by law are false and misleading, he should not be permitted by reason of his own wrongful acts to profit thereby. The sounder and better rule, and in my opinion supported by the great weight of authority, tolls the running of the statute of limitations until the discovery of the fraud." (Italics ours.)

The test, therefore, is not whether the action is in form one of fraud, but whether it seeks relief on account of fraud in the original transaction. This in substance is our decision in *Tom Reed Gold Mines Co.* v. *United Eastern Mining Co., supra*. We hold, therefore, that fraudulent concealment by one occupying a position of trust tolls the running of the statute of limitations until the other party discovers or is put upon reasonable notice of the breach of trust, regardless of the form of the action. We think this rule is both reasonable and just. It would indeed be a grievous wrong if a public officer by the very concealment of his defalcations for a year could plead that the statute of limitations had run against a recovery. If, then, plaintiff in cause No. 11471 had amended its complaint by alleging affirmatively therein that the defalcation was not discovered until within the statutory period, it would have stated a good cause of action as against the statute of limitations. Such being the case, the record does not show affirmatively that the judgment of dismissal in cause No. 11471 was based on a demurrer which must have determined the merits of the action, and it is not *res*

*judicata* against either Pima county or the state of Arizona. This also disposes of the question of whether the state had any real interest in the action. Had the matter been *res judicata* as to Pima county, it might have been necessary for us to consider the question, but, since it was not, the objection that the state was not the real party in interest could only be raised by demurrer or answer, and, as this was not done, it was waived. Section 3777, Rev. Code 1928. We hold, therefore, that the state of Arizona had the right to maintain its action, and that, if it appears from the pleadings and evidence that the alleged fraudulent conversion was not discovered until less than a year before the commencement of the present action, the plea of statute of limitations would not be available. When, however, defendant did plead the statute of limitations in bar of the action, if plaintiff wished to take advantage of the rule it should have replied to the plea in bar by alleging that, notwithstanding the defalcation complained of occurred more than one year before the filing of the action, it had not been discovered by plaintiff until less than a year before the action was begun, and the reply would have been good as against a demurrer. In the absence of such a reply, the court should have sustained the plea in bar of the one-year statute of limitations. For this reason it is necessary that the case be remanded, and, if plaintiff desires to reply as we have indicated, the issues should be retried on the principles we have set forth in this opinion.

We might well decline to consider the other questions raised by the appeal, but, since in the case of a new trial many of them may arise again, we discuss some of them.

It is said that it does not appear which portion of the money converted belonged to Pima county and which portion to the state. This would only be material if we held that the statute of limitations had run

against Pima county. Since it had not, and the money belonged to one or the other, it is immaterial in this case. It is for the state and county to determine that between themselves.

The next question which we consider is whether the evidence sustains the judgment. A bill of particulars was delivered setting up certain specific items of money which it was alleged were collected by Griffith and Pfeiffer and not paid over to the county treasurer, and it is contended that the proof shows conclusively that these specific items were actually paid into the county treasury.

We have examined the transcript of evidence, and it appears therefrom the theory of the state as to the way the transactions on account of which the suit has been brought were carried on was in substance as follows: The assessor or his deputies would send out notices of a personal property assessment, no record thereof being preserved in the office. When the taxpayer would come in and pay by check the tax shown on the assessment, a receipt would be issued him. These receipts were supposed to be made in duplicate, one copy being given to the taxpayer and the other kept as an office record of the payment. Instead of the duplicate in the office being filled in so as to show the taxpayer and the amount paid to correspond with the original given out, it was at some later time filled up with the name of another taxpayer, whose tax was an amount much less than that which had actually been paid by the first one, and the cash book would show only the lesser amount, so that the office records did not show the amount of the large sum or the person who paid it. These checks, however, had to be cashed in some manner, and the way in which this was done was usually by a deposit to the official account of the assessor in some bank. If all the funds, both checks and cash, received by the assessor, had been so deposited under this system,

there would have been a large excess in his bank account over the amount shown by the office records as collected. The way in which this situation was met was by converting the cash which some of the taxpayers used in paying their taxes in the assessor's office in an amount equal to the excess of the checks so deposited over the amount shown by the office records as received, so the total sum actually deposited in bank was equal to that shown by the duplicate receipts in the office on which settlement was made with the county treasurer. In this manner a balance between the office records and bank accounts was made. The fact, therefore, was that the cash received through the banks on the checks handled in the above manner was used to pay for the taxes of other persons as shown by the duplicate receipts in the assessor's office, while the cash actually received in payment of taxes by those others in a sufficient quantity to equal the checks so deposited was never placed in bank, being retained by the assessor or his deputies, and never passing into the possession of the county treasurer.

The bill of particulars furnished as above shows only taxes paid by check, for in most cases it was only specific items of this nature which could be traced by legal evidence from the taxpayer to the assessor and a failure to account therefor shown. The evidence indeed indicates there was a probability of a much larger defalcation, but no practical method of proving the same. It is urged that by furnishing the bill of particulars in question plaintiff was bound to prove that the specific dollars which passed into the bank account of the assessor through the payment of the checks given by the particular individual or company named in the bill of particulars were converted by the assessor, and that, since it appears that these checks were deposited in the account of the assessor and a sum of money equal thereto passing

into the hands of the treasurer was through the check of the assessor on that account, although no credit was given the taxpayer named in the bill of particulars in either the treasurer's or assessor's office, the evidence showed the items named in the bill of particulars were never converted, and the judgment had no competent evidence to sustain it. In support of this theory counsel call our attention to the case of *Proto* v. *Chenoweth*, 33 Ariz. 261, 263 Pac. 943. Under the circumstances of that case, we think the decision rendered therein is correct. We said therein:

" . . . The reason for requiring an itemized statement of the account, consisting of items and transactions running over a considerable period of time, is obvious. It is to inform the adverse party with what he is charged and to afford him an opportunity to marshal his evidence to meet the charges, otherwise he can justly plead surprise and lack of preparation. . . . "

In the case at bar it appeared that none of the money received on the items set forth in the bill of particulars had ever been paid to the county treasurer in the sense that credit was given therefor by either the assessor or the treasurer to the taxpayer who paid it. It is true the taxpayer could not have been again called on to pay the tax. But that would have been equally true had the assessor converted the very dollars paid on his check. Under these circumstances, we think the bill thoroughly and properly advised the assessor that he would have to be prepared to meet the claim that it was by and through the handling of the check of the particular taxpayer named in the bill that the alleged defalcation occurred. Under the system which it is claimed by the testimony defendants used, it would have been utterly impossible for plaintiff, even though amply able to prove the total defalcation and the manner in which

it was carried on, to show just which particular dollar of which particular taxpayer was retained by defendants. The law does not require impossibilities, especially where it is evident that no surprise or injustice will be worked upon a party to an action, and that he himself has created the situation of which he seeks to take advantage. We are of the opinion that the bill of particulars rendered fully advised defendants of what they would be expected to meet so that it accomplished all the purposes for which a bill of particulars is required. Had there been any question of surprise or lack of ability to meet the issues on account of the nature of the bill of particulars, or any item thereof, the matter could have been called to the attention of the court and corrected by a continuance or otherwise. We are satisfied that the evidence in the record is sufficient to sustain a judgment against the parties if the pleadings and the evidence show that the alleged defalcation was not discovered until less than a year of the time the action was brought.

It is urged also that there is no evidence that Griffith collected or converted to his own use any of the moneys in question, but that at most they were collected by some deputy of his, and never paid over to the county. We think this objection is more fanciful than real. Griffith was responsible, and so were his bondsmen, for the acts of his deputies, clerks and assistants, and it was not necessary that the court determine which particular one of the deputies actually got away with the money. Paragraph 170, Rev. Stats. Ariz. 1913 (Civ. Code).

We have considered the other objections raised, but think it unnecessary to discuss them. On account of the failure of the pleadings to set up either in the complaint or by reply that the defalcation alleged was not discovered by plaintiff until within the period of one year before this action was brought, it is neces-

sary that the case be remanded to the superior court for a new trial in accordance with the principles laid down in this opinion. It is so ordered.

ROSS, C. J., and McALISTER, J., concur.