Frank J. GEMIGNANI, Individually and as Administrator of the Estate of Gerald Robert Gemignani, Deceased

v.

PHILADELPHIA PHILLIES NATIONAL LEAGUE BASEBALL CLUB, INC.

Civ. A. No. 32001.

United States District Court E. D. Pennsylvania.

Dec. 14, 1967.

**466**

Arthur G. Raymes, John J. McCarty, Richter, Lord, Toll Cavanaugh & McCarty, Philadelphia, Pa., for plaintiff.

John B. Hannum, Pepper, Hamilton & Sheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HIGGINBOTHAM, District Judge.

In this action brought under the Pennsylvania Survival Act, P.L. 512, April 18, 1949, 20 Pa.Stat.Ann. § 320.601, defendant has moved for summary judgment pursuant to Rule 56, F.R.Civ.P., on the ground that the two year statute of limitations had run prior to the filing of the complaint. 12 Pa.Stat.Ann. § 34 (1895). The relevant facts, considered for the purposes of this motion in the light most favorable to the plaintiff, are as follows:

During September, 1958, the deceased signed a contract to play baseball for defendant's minor league team at Bakersfield.

In March, 1959, the deceased attended Spring training with the defendant and was there examined by the defendant's doctor. At the examination, there was revealed a symptomatic blood condition. Following this discovery, it is alleged, neither the defendant nor its doctor treated the deceased for this condition, nor did they advise either the deceased or his family of its existence so that treatment could have been obtained for him. It is this failure, which allegedly precluded early treatment thereby allowing the condition to develop into one of terminal nature, which is the basis for this action.

On July 15, 1960, defendant gave plaintiff an unconditional release from the contract. Deceased then returned home and, on August 3, 1960, was hospitalized because of a serious kidney problem.

Sometime in August, 1960, plaintiff learned that the deceased's doctor, Dr. Kitchen, had contacted defendant and had learned of the 1959 examination and of the symptomatic blood condition revealed thereby. There is no evidence presently before me that, prior to August 31, 1960, plaintiff reasonably suspected or should have reasonably suspected that the examination, the facts which it revealed and the failure of defendant to either treat it or inform deceased's family about it, were causally connected to the then condition of the deceased.

On September 3, 1960, deceased died as a result of uremic kidneys.

On August 31, 1962, the complaint was filed.

The question which is dispositive of defendant's motion is whether the statute of limitations begins to run from the date on which the plaintiff knows facts from which, through the exercise of reasonable diligence he could learn the cause of the injury; or whether the statute begins to run from the time the plaintiff, through the exercise of reasonable diligence *should have learned both the facts* in question *and* that those facts bore some *causative relationship* to the injury.

As for the statute of limitations, there seems to be no dispute here that the statute runs, on causes arising from subsurface injury, from the time of discovery of *the cause* of the harm or the time when *the cause* of the harm reasonably *should have been discovered*, whichever is earlier. * * * The same principle has been adverted to in a cause arising from the alleged malpractice of a surgeon in failing to provide for the removal, at the proper time, of a rubber tube left in the patient's wound, which was invisible from the outside. Byers v. Bacon, 1915, 250 Pa. 564, 95 A. 711. * * *" (Emphasis added.) Smith v. Bell Telephone Co., 397 Pa. 134, 141–142, 153 A.2d 477, 481 (1959). See also Ayres v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959).

It is true that in the cited cases, the courts spoke in terms of discovery of facts. However, it is also clear from reading those cases that discovery of the causative facts *necessarily* gave use, *simultaneously* to discovery of the causative relationship. Moreover, it would require the most narrow reading of the language of those cases and the ignoring of the policy basis thereof to fail to recognize that "discovery of the cause of harm" must comprehend discovery of both the facts or occurrences and also discovery of reason to believe that those facts might bear a causative relationship to the harm.

■ While plaintiff certainly must exercise reasonable diligence to inform himself of the facts and how they may relate to each other, the statute should not begin to run until, through reasonable diligence he should have reason to know that a *claim* exists.

As scientific knowledge and diagnostic techniques evolve, it becomes increasingly unfair to have the statute run from the time at which the injured party or his representative knew *facts* which might have led him to discover a cause of the injury—even though at the time these facts were learned there was no reason for him to associate them with the injury in question. On the other hand, "much of the seeming hardship to a defendant is relieved by the fact that the same unavailability of scientific knowledge which may excuse a plaintiff's delay may also serve to excuse the defendant's conduct which is claimed to have been lacking in reasonable care." Daniels v. Beryllium Corp., 227 F.Supp. 591, 595 (E.D.Pa.,1964).

■ There is nothing in the record as it now stands so indisputable as to require that I find that, as a matter of law, the plaintiff, prior to August 31, 1960, should reasonably have known or suspected that the alleged negligence of the defendant following the March, 1959 examination was a cause of his son's then terminal illness. Thus, defendant's present motion for summary judgment must be denied. It should be clear, however, that this denial will not preclude the trial judge or jury from making a finding adverse to the plaintiff with respect to his knowledge of both causative facts and causative relationship prior to August 31, 1960, and consequently granting any motion filed by defendant for a directed verdict.