482 P.2d 497

**Francine Rae MAYER and Eric Dorian Mayer, wife and husband, Appellants,**

v.

**GOOD SAMARITAN HOSPITAL, an Arizona corporation, Clifford E. Ernst and Jane Doe Ernst, his wife, Edward Sattenspiel and Jane Doe Sattenspiel, his wife, Appellees.**

**No. 1 CA-CIV 1152.**

Court of Appeals of Arizona, Division 1, Department B.

March 17, 1971.

Rehearing Denied April 5, 1971.
Review Denied April 27, 1971.

Langerman, Begam & Lewis, by James J. Leonard, Jr. and Kenneth P. Clancy, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Frank A. Parks and George H. Mitchell, Phoenix, for appellees Good Samaritan Hospital.

Jennings, Strouss & Salmon by W. Michael Flood, Phoenix, for appellees Ernst.

Jack M. Anderson and Paul W. Hollo-way, Phoenix, for appellees Sattenspiel.

JACOBSON, Presiding Judge.

The only issue presented in this appeal is when does a cause of action for personal injuries arising out of a malpractice action "accrue" for purpose of causing the running of the statute of limitations to commence.

On March 13, 1964, the plaintiff-appellant, Francine Rae Mayer, was admitted to Good Samaritan Hospital in Phoenix, Arizona, for the induced delivery of her first child. Mrs. Mayer had previously been under the treatment of Doctors Sattenspiel and Ernst for both pre-natal care and a pre-existing diabetic condition. Following an uneventful delivery, Mrs. Mayer complained of nausea, nervousness and jitters. On the third or fourth day following the delivery of her child, she suffered a diabetic "episode" which caused her to fall out of bed, and thrash about uncontrollably.

Following Mrs. Mayer's release from the hospital she continued to feel ill, complaining of headaches, pressures in her neck and back and overall weaknesses.

In the fall of 1964, she sought the medical advice of other physicians and thereafter it appears she diligently attempted to find the cause for her complaints from doctors in both Arizona and California.

Finally in November of 1967, Mrs. Mayer underwent a complete series of diagnostic tests at Cedars of Lebanon Hospital in California. At the conclusion of her tests she was informed that her trouble stemmed from a permanently damaged pituitary gland which could have resulted from the insulin shock she suffered following the birth of her child in 1964. Six months after obtaining this information, she instituted the subject litigation against her former doctors and hospital for malpractice in connection with her postnatal care.

After the normal pretrial discovery procedures had been completed, all defendants moved to dismiss plaintiffs' complaint based upon the defense that her cause of action was barred by the statute of limitations. The Maricopa County Superior

Court treated the motions to dismiss as motions for summary judgment and after considering the pleadings, interrogatories and depositions granted the defendants' motions. This appeal followed. The facts as presented herein are taken in a light most strongly in support of plaintiffs' position.

The plaintiffs on appeal do not contend in any manner that any of the defendants knowingly or fraudulently concealed her true condition from her or that her treatment by the defendants continued for such a period of time as to make the filing of her complaint in May, 1968, timely. Thus, we have placed squarely before us the limited question as to when Mrs. Mayer's cause of action accrued.

The applicable portion of the statute of limitations (ARS § 12–542), is as follows:

"There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterwards, the following actions:

(1) For injuries done to the person of another * * *."

■ Plaintiffs contend that Mrs. Mayer's cause of action accrued at such time as she discovered or by the exercise of reasonable diligence should have discovered the alleged negligence of the defendants. This so-called "discovery rule" is expressed as follows:

"While the plaintiff certainly must exercise reasonable diligence to inform himself of the facts and how they relate to each other, the statutes should not begin to run until through reasonable diligence the plaintiff should have reason to know that a claim exists." Gemignani v. Philadelphia Phillies National League Baseball Club, 287 F.Supp. 465, at 467 (E.D.Pa.1967).

Defendants on the other hand contend that the cause of action "accrues" on the happening of the act giving rise to the cause of action (in this case the conduct which gave rise to the insulin shock epi-

sode of 1964) or at the latest when the symptoms of the injury began (again in this case, 1964).

To reach a determination in this case, the court is confronted with the task of first making a determination as to whether this question has previously been decided in this state, and if not, what was the intent of the legislature in its use of the word "accrues" in the enactment of this statute.

Defendant contends that the question of when the statute of limitations starts to run in malpractice cases is settled in Arizona by the case of Acton v. Morrison, 62 Ariz. 139, 155 P.2d 782 (1945). In that case the patient filed a malpractice suit against her dentist alleging that the defendant had negligently broken off a portion of a dentist drill and a portion of a hypodermic needle which became imbedded in her jawbone. The alleged act of negligence occurred in July or August of 1935 and the complaint was filed in May of 1942. The complaint in *Acton* alleged a course of conduct on the part of the dentist to conceal from his patient the true nature of her complaint arising from his negligent acts and that such conduct was fraudulent. The complaint further alleged that the true nature of the patient's injury was not discovered by her until October or November of 1941.

The first appeal in *Acton* contains language from which both the plaintiff and defendant might find solace. The court in that case when speaking of the effect of fraudulent concealment on the statute of limitations stated, "that if the wrong constituting the cause of action is concealed, limitations will not begin to run until such concealment is discovered, or reasonably should have been discovered." *Citing* Tom Reed Gold Mines Co. v. United Eastern Min. Co., 39 Ariz. 533, 8 P.2d 449 (1932). From this plaintiff could argue that the cause of action accrued at the time of discovery.

However, Acton also states, "that fraudulent concealment by one occupying a posi-

tion of trust *tolls* the running of the statute of limitations until the other party discovers or is put upon reasonable notice of the breach of trust," *citing* Griffith v. State, 41 Ariz. 517, 20 P.2d 289 (1933). From this, defendant could legitimately argue that the cause of action accrues at the time that the act is committed, but that the fraudulent concealment tolls the running of the statute until discovery. The second appeal in *Acton,* Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590 (1948), also speaks in terms of *tolling* the statute of limitations.

In our opinion, the *Acton* cases did not decide, nor was it necessary for the court's determination to decide, when the cause of action actually accrued. The court in *Acton* merely decided that regardless of whether the cause of action accrued at the time of the act or at the time of the discovery of the act, the defendant could not take advantage of his fraudulent concealment to defeat plaintiff's cause of action.

In Rodriquez v. Manoil, 9 Ariz.App. 225, 450 P.2d 737 (1969), this court had occasion to discuss the problem of the statute of limitations in malpractice cases. However, the Court of Appeals was not called upon to make a decision as to when the cause of action actually accrued, for under either the theory that the discovery starts the statute running, or the wrongful act or admission starts the statute running, plaintiff's claim was barred. In that case plaintiff underwent corrective surgery two weeks after the allegedly negligent surgery complained of. The court held that this, as a matter of law, was sufficient to place plaintiff on notice of the wrongful acts of the defendant and since plaintiff's complaint was filed more than two years after this discovery her claim was barred.

Plaintiff also cites to the court the case of Lehnhardt v. City of Phoenix, 105 Ariz. 142, 460 P.2d 637 (1969) as authority in Arizona that the "discovery rule" has been adopted by our Supreme Court. In that case the court was dealing with alleged misrepresentations made in a map to illustrate properties sought to be obtained for right of way purposes. We gather from the opinion that the court was referring to the statute of limitations dealing with fraud or mistake which specifically bases the running of the statute upon discovery of the fraud or mistake.

From a review of the law as it exists in the State of Arizona, it is our opinion that when a cause of action accrues for malpractice remains an open question.

Having determined that his question is open to our inquiry we are confronted with reaching our decision based upon what the legislature intended by the use of the word "accrues". In our opinion an analysis of the underlying basis for statutes of limitation generally is necessary, to clearly pinpoint the evils which such statutes are intended to correct.

The traditional citation for the basis of all statutes of limitation is Riddlesbarger v. Hartford Ins. Co., 74 U.S. (7 Wall.) 386, 19 L.Ed. 257 (1869):

"They [statutes of limitation] are founded upon the general experience of mankind, that claims which are valid are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth." 74 U.S. at 390, 19 L.Ed. at 259.

We note that one of the fundamental reasons underlying the philosophy of these statutes—the presumed invalidity of a claim allowed to become stale—is not present in the case where the injured plaintiff has no knowledge that such a

claim exists. Presumably the legislature would not have intended a result which would frustrate such a fundamental reason for all statutes of limitation. Moreover, in arriving at legislative intent we must presume the legislature did not intend an unjust result. ARS § 1–211, subsec. B. As was stated in Berry v. Branner, 245 Or. 307, 421 P.2d 996 (1966):

> "To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy but before the wrong was ascertainable to you, the law stripped you of your remedy;' makes a mockery of the law." (citation omitted) 421 P.2d at 998.

The jurisdictions of this country have become almost equally divided over the question of when a cause of action accrues in malpractice cases.[1] To analyze each and every one of these decisions would unduly lengthen this opinion. Suffice it to say, from our examination of the numerous authorities, we conclude the legislature intended that a cause of action in a malpractice case accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time. Yoshizaki v. Hilo Hospital, 50 Haw. 150, 433 P.2d 220 (1967) and cases cited therein. By so concluding, we specifically reject the defendants' alternate argument that the statute begins to run from the time the injuries manifest themselves. However, this point in time may be important in considering the issue as to whether the plaintiff by the exercise of reasonable diligence should have known of defendants' negligence.

■ The defendants strongly urge that a construction of the statutes of limitation and particularly one affecting malpractice causes of action is properly a function for the legislature rather than for the court.

This argument has some appeal. The legislature is better equipped than the courts to take into consideration whether an outside time limitation should be put on a "discovery" oriented statute of limitations, and the length of such a limitation. Also historically, statutes of limitation have arisen from the legislative side of the board, they being unknown at common law, Uscienski v. National Sugar Refining Co., 19 N.J.Misc. 240, 18 A.2d 611 (1941) (although Laches is a time honored doctrine in equity.

However, the doctrine that fraudulent concealment of a cause of action either tolls the statute or prevents its running, is of judicial origin, not legislative. Acton v. Morrison, *supra*. The rule that unknown trespass should be treated as constructive fraud to keep the statute of limitations from running is a judicial rule, not legislative. Tom Reed Gold Mines Co. v. United Eastern Min. Co., *supra*.

We have attempted here to ascertain the legislature's intent, rather than establish a new statute of limitations by judicial legislation. If the legislature concludes that our determination of their intention be incorrect, or if correct, desires to place outside limitations on actions such as this, it

---

1. Flanagan v. Mount Eden General Hospital, 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1959), listed 9 jurisdictions limiting the discovery rules to foreign object cases; 11 jurisdictions applying the discovery rule to all malpractice cases; 2 states having adopted the discovery rule by statute; and 21 states holding the cause of action accrued from the commission of malpractice. (in-
terestingly, this case lists Arizona under the authority of *Acton* as a "commission of the malpractice" state.) Since that decision, Nebraska and North Dakota have joined the "no limitation discovery rule" states; and Illinois, Iowa, Ohio and Washington have been dropped from the 21 state category by adopting some type of discovery rule.

is more than appropriate that they should do so.

The judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.

EUBANK, J., concurs.

HAIRE, Judge (dissenting):

From the standpoint of considering what the law "ought to be" I agree with much that is stated in the majority opinion. However, because of what I consider to be the proper function of the judiciary, and in particular that of an intermediate appellate court, I feel that I must resist the temptation to venture into the legislative arena to effect a change in the existing Arizona statutory laws governing the limitation of actions. I believe that the question of the desirability of the changes in Arizona statutory law which are wrought by the majority opinion are matters which should be left to the legislature, especially inasmuch as the legislature is presently considering statutory amendments dealing with the precise question here involved. See H.B. 225, First Regular Session, Thirtieth Legislature, introduced February 16, 1971.

At the time of the enactment of the existing statutes of limitation governing various civil actions, the legislature was not unaware of the judicially established meaning of the word "accrues" and adopted statutory modification of that meaning in instances concerning which it felt that overriding public policy demanded such modification. Thus in A.R.S. § 12–543, subsec. 3 concerning fraud cases the legislature expressly enacted the discovery rule here urged. For a few of many other instances of statutory modification of the established judicial meaning of the word "accrues," see A.R.S. § 12–542, subsec. 2 and A.R.S. § 12–542, subsec. 6. Nor was the legislature unaware that in certain circumstances overall public policy might best be served by providing for the tolling of the statute of limitations on an accrued cause of action. See A.R.S. § 12–501 relating to defendant's absence from the state; 12–502 relating to minority, insanity and imprisonment; and 12–504 relating to the effect on the statute of limitations of either the prospective plaintiff or prospective defendant's death.

The point of the foregoing is that the statute of limitations governing injuries to the person being considered in this action is a part of a complex, well-thought out body of statutory limitation law. The necessity for the modification of that law is a question for the legislature to consider, and if such modification be found necessary, then the legislature is much better suited to accomplish that modification and can impose such limitations and safeguards as it deems necessary and proper in view of sometimes conflicting and inter-relating public policy considerations.

Apart from the foregoing, there is a further reason why I must dissent from the conclusions reached by the majority. In my opinion, the function of an intermediate appellate court is to apply the law as it has been applied by previous opinions of the highest state appellate court, and let that higher court reconsider the existing law if appropriate. It seems clear to me that the basic principle underlying the Arizona Supreme Court's holdings in many prior decisions, and particularly in Acton v. Morrison, *supra,* has been that in the absence of fraudulent concealment, the statute of limitations in a negligence action runs from the date of the defendant's conduct which constitutes the tort with which he is charged. That basic underlying principle should not be subjected to modification by a lower appellate court. While the application of this appellate discipline may occasionally require an intermediate appellate court to arrive at a result which it would not otherwise reach, the principle is a necessary cornerstone of any orderly and workable court system.