IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG 22 2013

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| SUSAN WYCKOFF, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | 2 CA-CV 2012-0152 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| MOGOLLON HEALTH ALLIANCE, | ) | |
| a foreign corporation, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF GILA COUNTY

Cause No. CV201000376

Honorable Gary V. Scales, Judge Pro Tempore
Honorable Christopher P. Staring, Judge

AFFIRMED

---

Watters & Watters, P.L.L.C.
  By Andrea E. Watters                                                    Tucson
                                           Attorneys for Plaintiff/Appellant


Law Offices of Mary Brooksby, PLLC
  By Don Stevens                                                        Phoenix
                                          Attorneys for Defendant/Appellee

---

E C K E R S T R O M, Judge.

¶1      Plaintiff Susan Wyckoff appeals from the trial court's grant of summary judgment in favor of defendant Mogollon Health Alliance. For the following reasons, we affirm.

**Factual and Procedural Background**

¶2      In reviewing a trial court's grant of summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the losing party. *See Acosta v. Phx. Indem. Ins. Co.*, 214 Ariz. 380, ¶ 2, 153 P.3d 401, 402 (App. 2007). Wyckoff was employed by a hospital owned by Mogollon Health Alliance (Mogollon) when she noticed water leaks in her office "staining the walls and causing an offensive odor." Throughout the time of her employment, Wyckoff recognized a pattern of illness: she would gradually become more and more ill as the workweek progressed, feel "very ill" by Friday, but would then feel better by Sunday, "only to start the illness cycle all over again come Monday." Wyckoff moved to another office within the same building, but her health did not improve. After the move, she noticed "a black substance she believed to be mold" throughout the building. Wyckoff and other employees complained about the mold problem. She also conducted an air quality test within her office and provided the results to her employer as proof that the environment was unsafe. Wyckoff's health problems worsened, and she eventually left her employment at the hospital on February 1, 2008.[1]

---

[1]In what appears to be a typographical error and repeated oversight, Wyckoff mistakenly claims she retired in February 2006.

2

¶3 Wyckoff filed a complaint in Pima County against Mogollon, alleging premises liability and negligence. Mogollon did not file an answer in a timely manner, and the court entered a default judgment against Mogollon in the amount of $650,000. Mogollon filed a motion to set aside the default judgment, which the court granted. The court also granted Mogollon's motion to transfer the case to Gila County. Mogollon then filed a motion for summary judgment in Gila County, claiming Wyckoff's action was barred by the statute of limitations. The court granted Mogollon's motion. On appeal, Wyckoff contends the court erred in setting aside the default judgment and in granting Mogollon's motion for summary judgment.

**Jurisdiction**

¶4 As a threshold matter, Mogollon posits that this court lacks jurisdiction to consider the order vacating the default judgment. Under A.R.S. § 12-2101(A)(2), this court has jurisdiction to hear an appeal "[f]rom any special order made after final judgment." Although this does not include an order setting aside an entry of default, it does generally include an order setting aside a default judgment. *Sanders v. Cobble*, 154 Ariz. 474, 475-76, 744 P.2d 1, 2-3 (1987). However, the order setting aside the default judgment in this case was not signed and did not concern all parties, and it was therefore not appealable under § 12-2101(A)(2). *See* Ariz. R. Civ. P. 54(a), (b), 58(a). Nonetheless, "an appealable judgment . . . brings before us all the orders from which . . . separate appeals could not be taken." *Miller v. Ariz. Bank*, 45 Ariz. 297, 303, 43 P.2d 518, 521 (1935); *see* A.R.S. § 12-2102(A) (appellate review from "final judgment" includes "intermediate orders involving the merits of the action and . . . all orders and

3

rulings assigned as error"). Therefore, because we have jurisdiction to consider the trial court's grant of summary judgment under § 12-2101(A)(1), we likewise have jurisdiction to consider all issues related to this judgment that were not separately appealable, including the order vacating the initial default judgment.

## Abatement

**¶5** Mogollon also argues that Wyckoff's failure to serve her complaint in a timely manner caused her action to abate. Abatement is an affirmative defense that must be raised below, otherwise it is waived. *Snow v. Steele*, 121 Ariz. 82, 86, 588 P.2d 824, 828 (1978); *see Schwartz v. Ariz. Primary Care Physicians*, 192 Ariz. 290, 295, 964 P.2d 491, 496 (App. 1998) (recognizing 1991 rule changes "did not eliminate the doctrine of abatement" but "simply shortened the time limit for service"). Because Mogollon has raised this claim for the first time on appeal, and because the trial court did not dismiss the action against Mogollon due to untimely service, *see* Ariz. R. Civ. P. 4(i), we do not consider the argument further. *Owens v. City of Phoenix*, 180 Ariz. 402, 407 n.8, 884 P.2d 1100, 1105 n.8 (App. 1994).

## Default Judgment

**¶6** Wyckoff asserts the court erred in granting Mogollon's motion to set aside the default judgment. We review a trial court's order vacating a default judgment for an abuse of discretion. *See BYS Inc. v. Smoudi*, 228 Ariz. 573, ¶ 14, 269 P.3d 1197, 1201 (App. 2012). She claims the court erred in finding the judgment was void, rather than voidable, and that Mogollon had not met its burden of showing the judgment should be vacated under Rule 55(c) and Rule 60(c), Ariz. R. Civ. P. However, Wyckoff never

argued to the trial court that the judgment was voidable, rather than void. She has therefore waived this argument on appeal. *See Dawson v. Withycombe*, 216 Ariz. 84, ¶ 64, 163 P.3d 1034, 1055 (App. 2007).[2]

## Statute of Limitations

¶7            Wyckoff next contends the trial court erred in finding her claims time barred. "In reviewing the granting of summary judgment on statute of limitations grounds, . . . [w]e must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Logerquist v. Danforth*, 188 Ariz. 16, 18, 932 P.2d 281, 283 (App. 1996).

¶8            A cause of action based on a personal injury must be brought within two years after the cause of action accrues. A.R.S. § 12-542(1). "The purpose of the statute of limitations is to 'protect defendants and courts from stale claims where plaintiffs have slept on their rights.'" *Doe v. Roe*, 191 Ariz. 313, ¶ 29, 955 P.2d 951, 960 (1998), *quoting Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 590, 898 P.2d 964, 968 (1995). Statutes of limitations are premised on two foundations: First, that a person who has a valid claim will promptly "'attempt to enforce a demand,'" and second, that after too much time has passed, "'by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth.'" *Mayer v. Good Samaritan Hosp.*, 14 Ariz.

---

[2] Because Wyckoff's remaining arguments challenging the trial court's order setting aside the default judgment are premised on her contention that the court erred in concluding the judgment was void, we do not address them.

App. 248, 251, 482 P.2d 497, 500 (1971), *quoting Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. 386, 390 (1868).

¶9 However, in some situations, a plaintiff may be injured in a way that is difficult for her to discover within the period of limitations. *Id.* at 251-52, 482 P.2d at 500-01. Acknowledging that a plaintiff "cannot maintain an action before she knows she has one," Arizona courts have adopted the discovery rule. *Id.* at 252, 482 P.2d at 501. Under that rule, "a cause of action accrues 'when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct.'" *Logerquist*, 188 Ariz. at 19, 932 P.2d at 284, *quoting Mayer*, 14 Ariz. App. at 252, 482 P.2d at 501. In other words, the statute begins to run not from the moment of the defendant's injurious conduct, but when a claimant knows or should know she has been injured and when she likewise "knows or with reasonable diligence should know the facts underlying the cause." *Doe*, 191 Ariz. 313, ¶ 29, 955 P.2d at 960. Arizona follows the discovery rule in cases of personal injury resulting from exposure to toxic substances. *See Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 378, 752 P.2d 28, 31 (App. 1987). The plaintiff has the burden of establishing that the discovery rule should apply to delay the statute of limitations. *Logerquist*, 188 Ariz. at 19, 932 P.2d at 284.

¶10 Arizona courts have not addressed the issue of the discovery rule in the specific context of toxic mold exposure. However, in reviewing cases from other jurisdictions, a general rule emerges: The cause of action begins to accrue when the claimant experiences physical signs and symptoms of illness, knows that she has been exposed to mold, and knows that mold may present a health hazard. *See, e.g., Graveline*

6

*v. Select Comfort Retail Corp.*, 871 F. Supp. 2d 1033, 1038 (E.D. Cal. 2012) (statute began to run when plaintiff discovered mold in mattress); *Doherty v. Admiral's Flagship Condo. Trust*, 951 N.E.2d 936, 941-42 (Mass. App. Ct. 2011) (statute began to run when plaintiff received report of hazardous mold in her condominium); *Marcinkowski v. Castle*, 870 N.Y.S.2d 206, 207 (App. Div. 2008) (statute began to run when plaintiff began to experience health issues from previously discovered mold); *Pirtle v. Kahn*, 177 S.W.3d 567, 573-74 (Tex. App. 2005) (statute began to run when plaintiff discovered mold in her apartment and inferred connection to her health problems).

¶11        We find *Gerke v. Romero*, 237 P.3d 111 (N.M. Ct. App. 2010), particularly instructive.  In that case, a tenant began experiencing symptoms shortly after moving into a rental home.  *Id.* at 116.  The tenant eventually moved out of the home, and, at the time of the move, "was suffering from a host of symptoms, knew that there was mold in the home, believed that the mold was causing his symptoms, and had been informed by the [Environmental Protection Agency] that mold could indeed be dangerous to humans." *Id.* The court held that the date the tenant moved out was the latest possible date the accrual period could have begun, *id.*, even though he did not receive a "formal medical diagnosis" until nearly three years later. *Id.* at 115.

¶12        Here, although Wyckoff does not provide specific dates for the events leading up to her leaving employment at the hospital, they must have occurred before February 1, 2008, when she retired.  At that point, Wyckoff was experiencing physical illness.  She knew her illness grew worse as the workweek progressed and improved over the weekend, which she concedes gave her cause to suspect a condition at her workplace

7

was causing her illness. She had observed that "a black substance she believed to be mold was pervasive in her office," and she reported to her employer that this issue was causing her to experience health problems. Wyckoff even conducted a petri-dish test of the air in her office, and, although she does not specify precisely what was found, the results were sufficient for her to "advise [her employer] that the workplace was unsafe."

¶13 Like the plaintiff in *Gerke*, Wyckoff was experiencing physical symptoms, aware of the presence of mold, knew that mold was dangerous, and suspected that the mold could be the cause of her illness. 237 P.3d at 116. Because these events all occurred before February 1, 2008, Wyckoff's cause of action accrued at some point before that date. Wyckoff did not file her complaint until February 1, 2010, more than two years after accrual began.

¶14 Wyckoff emphasizes that, notwithstanding her suspicions regarding the cause of her illness, her treating physicians during her employment and after her retirement persistently declined to diagnose her ailments as having been caused by exposure to mold. To support this argument she presents medical reports from her treating physicians dated October and November 2006 (during her employment), March, April, and May of 2009 (more than a year after she asserts she "medically retired"), and August of 2009 (when she first received a diagnosis connecting her ailments to mold toxicity). If, hypothetically, these documents revealed that Wyckoff had presented her suspicions of mold toxicity to her physician in 2006 and had received a contradictory diagnosis, those facts might cause us to postpone the date of accrual. Accrual begins when a person knows, or with reasonable diligence should have known, the cause of her

8

injury, *Doe*, 191 Ariz. 313, ¶ 29, 955 P.2d at 960, and we would not hold that reasonable diligence requires a lay person to ignore the opinion of a trained medical expert.

¶15            However, the documents do not reflect, and Wyckoff does not allege, that she presented her suspicions regarding the mold to a medical professional before her retirement.  The first mention of mold in any of Wyckoff's medical records is dated April 13, 2009, more than one year after Wyckoff's retirement.  Wyckoff's own affidavit states that when her primary care doctor "was made aware of [her] problems, . . . [he] was not able to determine whether or not they were caused by the mold," and he referred her to a specialist for further consultation.  Moreover, at no point was Wyckoff ever definitively advised that her health problems were unrelated to the mold exposure.  To the contrary, the record suggests that once she raised the issue to her physician in April of 2009, he eventually referred her to a specialist who confirmed mold toxicity as the cause of her ailments.  Accordingly, when viewed in the light most favorable to Wyckoff, the record before the trial court does not support the inference that contradictory medical opinion overrode her initial belief about the cause of her injury.  Rather, the record suggests that, once she sought a medical opinion to confirm those suspicions, she eventually received that confirmation, albeit after several months had passed.[3]

---

[3]Wyckoff does not argue the statute of limitations should be tolled for the period between when she first saw her primary care physician, who could not confirm that suspicion, and when she received the diagnosis of mold toxicity, and therefore we do not consider it.  *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) ("[F]ailure to raise an issue either at the trial level or in briefs on appeal constitutes a waiver of the issue.").

¶16      The trial court therefore did not err in granting summary judgment in favor of Mogollon based on the statute of limitations.

**Disposition**

¶17      For the foregoing reasons, the judgment of the trial court is affirmed.


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge


CONCURRING:


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Presiding Judge


/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge