IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LORENZA KOPACZ, et al.,
*Plaintiffs/Appellants,*

*v.*

BANNER HEALTH, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 17-0493
FILED 7-5-2018

Appeal from the Superior Court in Maricopa County
No. CV2016-050010
The Honorable Susan M. Brnovich, Judge

**AFFIRMED**

COUNSEL

Law Office of Donald Smith, PLLC, Glendale
By Donald H. Smith
*Counsel for Plaintiffs/Appellants*

Campbell, Yost, Clare & Norell, PC, Phoenix
By Margaret F. Dean
*Counsel for Defendant/Appellee Banner Health*

Quintairos, Prieto, Wood & Boyer, PA, Phoenix
By Vincent J. Montell, Rita J. Bustos
*Counsel for Defendants/Appellees Raj D. and Sevitri Savajiyani*

_____

**OPINION**

_____

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

_____

J O H N S E N, Judge:

¶1　　　　Lorenza Kopacz appeals the superior court's grant of summary judgment, arguing the court erred by rejecting her contention that her temporary inability to consider bringing a medical malpractice claim tolled the statute of limitations.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　On December 20, 2013, Kopacz, then 80 years old, went to the emergency room at Banner Health, complaining of chest heaviness and shortness of breath.[1]  The next day, Dr. Raj Savajiyani examined her and told her she needed a cardiac catheterization, which he performed on December 23 by accessing her right femoral artery and vein through an incision in her right groin.

¶3　　　　The hospital discharged Kopacz on December 25.  A day later, a nurse examined Kopacz at her home and discovered that subcutaneous bleeding and swelling had developed around the incision site.  The area was soft and not tender to the touch, but the nurse told Kopacz and her daughter to watch the area and call if the symptoms worsened.  The next morning, December 27, the same nurse examined Kopacz at her home and found she was in severe pain in her hip and groin; the area around the incision had become hard and painful to the touch, with severe subcutaneous bleeding and swelling.

¶4　　　　An ambulance took Kopacz back to Banner, where a scan showed a large hematoma in her groin, thigh and buttock area and indicated a possible pseudoaneurysm in her femoral artery.  A surgeon recommended surgery, but before the surgery could commence, Kopacz began suffering additional complications, including cardiogenic shock and

_____

[1]　　　We view the evidence in the light most favorable to Kopacz, drawing all reasonable inferences in her favor.  *See Ochser v. Funk*, 228 Ariz. 365, 369, ¶ 11 (2011).

atrial fibrillation, and she was admitted to intensive care. She underwent emergency surgery early the next morning to relieve the complications from the hematoma that had developed after the catheterization.

**¶5**　　　Kopacz remained hospitalized until January 8, 2014, when she was released to a rehabilitation center. She continued to receive extensive wound care there until January 20, when she was readmitted to Banner with severe sepsis and hypotension. She was discharged from the hospital on February 1, but continued to have significant pain, and returned to the hospital once again for five days in late February when she experienced pressure in her chest. Her medical condition finally stabilized between March and July 2014.

**¶6**　　　On January 21, 2016, Kopacz and her spouse filed suit against Banner and Savajiyani and his spouse, alleging medical malpractice arising out of her medical treatment on December 21 and 23, 2013. The defendants moved for summary judgment, arguing that the two-year statute of limitations applicable to Kopacz's claim under Arizona Revised Statutes ("A.R.S.") section 12-542(1) (2018) had expired.[2] In her response and at oral argument on the motion, Kopacz argued defendants breached the applicable standard of care by failing to obtain her informed consent for the cardiac catheterization. The superior court granted the motion, finding that "the claim accrued no later than December 28, 2013," and therefore was time-barred.

**¶7**　　　Kopacz timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2018) and -2101(A)(1) (2018).

## DISCUSSION

**¶8**　　　We review *de novo* the grant of a motion for summary judgment. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15 (App. 2007). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a); *Orme School v. Reeves*, 166 Ariz. 301, 305-09 (1990).

---

[2]　　　Absent material revision after the relevant date, we cite a statute's current version.

## A.    Limitations.

**¶9**        A medical negligence claim generally must be filed "within two years after the cause of action accrues."  A.R.S. § 12-542(1).  The date such a claim accrues is subject to the "discovery rule."  *See Walk v. Ring*, 202 Ariz. 310, 314-17, ¶¶ 14-26 (2002).  Under that rule, a claim accrues when the plaintiff has reason to connect her injury with a "causative agent" such that "a reasonable person would be on notice to investigate whether the injury might result from fault."  *Id.* at 316, ¶¶ 22, 23; *see also Wyckoff v. Mogollon Health All.*, 232 Ariz. 588, 591, ¶ 9 (App. 2013) ("[A] cause of action accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct.") (quotation omitted).

**¶10**        "[D]eterminations of the time when discovery occurs and a cause of action accrues 'are usually and necessarily questions of fact for the jury.'"  *Walk*, 202 Ariz. at 316, ¶ 23 (quoting *Doe v. Roe*, 191 Ariz. 313, 323, ¶ 32 (1998)).  When the "fact of injury is known but the possibility of negligence is difficult to discern," the cause of action may not accrue on the date the plaintiff learns of her injury.  *Walk*, 202 Ariz. at 314-15, ¶¶ 16-17.  In such cases, a patient's knowledge of her injury alone may not give adequate notice of who caused it, rendering summary judgment inappropriate.  *See id.* at 314-16, ¶¶ 17-22.  A medical provider, for example, may have concealed or failed to disclose facts relevant to a possible negligence claim.  *See id.* at 315, ¶¶ 18-20 (citing *Morrison v. Acton*, 68 Ariz. 27, 30, 34-36 (1948) (cause of action did not accrue when patient felt prolonged jaw pain after tooth extraction but dentist had concealed fact that he had left a broken piece of a metal surgical instrument embedded in patient's jaw)).

**¶11**        In other cases, however, an unexpected poor result immediately puts a plaintiff on notice that malpractice might have occurred; in these cases, the court may determine the date of accrual as a matter of law.  *Walk*, 202 Ariz. at 314, ¶ 16.  In *Trede v. Family Dental Ctr.*, 147 Ariz. 25, 26-27 (App. 1985), for example, a patient went to a dental center for a tooth extraction.  A nurse inserted a needle into the patient's hand to administer anesthesia and commented, "I think I missed the vein. Let's see."  *Id.* at 26.  The nurse pushed the needle's plunger and the patient immediately felt a burning sensation.  *Id.*  Although the nurse eventually was able to administer the anesthesia and the surgeon successfully extracted the tooth, the patient's hand had swollen and turned purple by the end of the procedure, and she suffered permanent injury.  *Id.*  The patient filed her complaint three days beyond the limitations period.  *Id.* at 26-27.  After the superior court held on summary judgment that the claim was time-barred, the patient argued on appeal she did not know she had

been injured until a few days after the extraction. *Id*. We affirmed, concluding the cause of action accrued the day of the extraction because the patient clearly knew she was injured that day and also knew then that the nurse had caused the injury. *Id*. at 27.

¶12        The record here likewise leaves no doubt about when Kopacz knew or should have known she might allege a claim based on lack of informed consent. She plainly knew within four days that she had suffered injury as a result of the catheterization. The morning of December 27, she reported "uncontrolled pain" in her right hip and groin, where doctors had cut into her femoral artery to perform the catheterization. She was rushed by ambulance back to the hospital, where she described her symptoms, and medical personnel there reported she was awake, alert and oriented. The next morning, she underwent surgery to repair the aneurysm and evacuate the hematoma in her hip and groin. If no one told Kopacz ahead of time that the cardiac catheterization might cause a hematoma and aneurysm in her hip and groin, she knew no later than when they appeared, four days after the catheterization, that she might have a claim based on lack of informed consent.

¶13        Kopacz further argues, however, that "her serious medical condition . . . prevented her from understanding what was happening to her and what caused it." In an affidavit submitted in response to the summary judgment motion, she declared she "was very ill and [had] very little recall of what was going on" while in the hospital, and "could not consider the possible cause of [her] medical problems" during that time. She further averred that after she was released to the rehabilitation facility on January 8, her "medical condition and medication made it difficult to understand what was happening to [her], and [she] could not consider the possible cause of [her] medical problems." She therefore contends she should not be charged with notice of her claim until on or after March 7, 2014, when she was finally able to "contemplate the possibility something had been done wrong."

¶14        Under Arizona law, a statute of limitations is tolled if a would-be plaintiff is of "unsound mind" when the cause of action accrues. A.R.S. § 12-502 (2018). *See Doe*, 191 Ariz. at 325-26, ¶¶ 40-42. Under this provision, the period during which the plaintiff is "of unsound mind" is not counted toward limitations, which will begin to run only "after removal of the disability." A.R.S. § 12-502; *see also* A.R.S. § 12-503 (2018) (once statute of limitations begins to run, it continues to run "notwithstanding a supervening disability").

**¶15**　　　　As applied here, § 12-502 is based on the principle that "it is unfair to bar an action in which the plaintiff is mentally disabled and thus unable to appreciate or pursue his or her legal rights." *Doe*, 191 Ariz. at 325, ¶ 41 (emphasis omitted).  But before the statute will apply in a case such as this, the plaintiff must submit "hard evidence" that she lacked the mental capacity to bring a claim based on the facts available to her. *Id.* at 326, ¶ 42. The evidence must show that the plaintiff is "unable to manage [her] affairs or to understand [her] legal rights or liabilities."  *Id.*  "[C]onclusory averments such as assertions that one was unable to manage daily affairs or understand legal rights and liabilities" do not constitute the hard evidence required to gain benefit from tolling for unsound mind. *Id.*

**¶16**　　　　Kopacz failed to offer evidence sufficient to toll limitations under § 12-502.  Her affidavit, and a similar one by her daughter, merely stated in conclusory fashion that for weeks after the procedure, Kopacz was too ill to consider bringing a malpractice claim.  And, as recounted above, the only "hard evidence" of Kopacz's mental state shows that when she returned to the hospital four days after the catheterization, she was alert, oriented and aware of the injury that had developed at the site of the procedure.[3]

**¶17**　　　　Without evidence sufficient to satisfy § 12-502, Kopacz proposes that the common-law discovery rule may toll limitations when a plaintiff cannot prove an "unsound mind" but asserts she was simply

---

[3]　　　　Courts in other states have held that injuries sustained in an accident may render a plaintiff temporarily of unsound mind. *See, e.g., Lowe v. Pue*, 257 S.E.2d 209, 212 (Ga. App. 1979) (plaintiff alleged accident rendered her "totally physically and mentally incapacitated with the result that she was incompetent to manage her affairs").  On the other hand, short-term effects of post-accident medication, by themselves, may not suffice. *See Eisenbach v. Metro. Transp. Auth.*, 62 N.Y.2d 973, 975 (1984) (effects of painkillers prescribed for injuries did not allow tolling under mental-disability statute: "The expansion of the statute to embrace such disability—undoubtedly experienced in varying degrees whenever pain-killing drugs are administered—should be accomplished, if at all, by legislative action."); *Fisher v. Ohio Univ.*, 589 N.E.2d 13, 16-17 (Ohio 1992) (same); *Hargraves v. Armco Foods Inc.*, 894 S.W.2d 546, 548  (Tx. App. 1995) ("purpose behind the tolling provision would not be furthered by holding that minor mental impairment tolls the limitations period").  Given Kopacz's failure to offer anything but conclusory statements in support of her contention that she could not "consider" a claim, we need not consider further whether she satisfied § 12-502.

unable to think about whether she might have a claim. But Kopacz cites no legal authorities, and we have found none supporting that proposition. Moreover, in *Doe*, our supreme court explained that the two legal rules work independently of each other and serve different purposes. In that case, the court first applied the discovery rule to determine when the claim accrued, then considered whether the plaintiff's mental state tolled the claim under § 12-502:

> While the purpose of the discovery rule and the tolling provisions for unsound mind are essentially similar, their applications are critically distinct. The discovery rule contains an informational component requiring that the factfinder determine when the plaintiff knew or should have known the facts that constitute a cause of action. Tolling for unsound mind, on the other hand, requires that the factfinder determine whether the plaintiff had the mental capacity to bring a claim based on those facts.

*Doe*, 191 Ariz. at 326, ¶ 41.

**¶18** Applying that reasoning here, as stated, Kopacz surely knew or should have known by December 27, 2013, of facts constituting her cause of action. Although she contends she was mentally unable to consider a claim based on those facts, whether she had the "mental capacity to bring a claim" is governed by § 12-502, *see Doe*, 191 Ariz. at 326, ¶ 41, and she has not shown that she was of an "unsound mind" within the meaning of that statute. *See Borchard v. Anderson*, 542 N.W.2d 247, 249-51 (Iowa 1996) (refusing to apply the discovery rule in favor of plaintiff with post-traumatic stress disorder who could not satisfy "mental illness" tolling statute); *Doe v. Roman Catholic Diocese of Jackson*, 947 So. 2d 983, 986, ¶ 7 (Miss. App. 2006) (when plaintiff knew of tortious acts, whether she "was mentally capable of understanding" them "is not the critical inquiry with the discovery rule").

**¶19** On this record, the superior court did not err in concluding that Kopacz's cause of action accrued and limitations began to run no later than December 28, 2013. The court therefore did not err in finding that Kopacz's claim, filed more than two years after that date, was time-barred.

**B.     Request for Explanation of the Superior Court's Decision.**

**¶20** Kopacz also argues the superior court erred in failing to grant her motion for a more specific statement of the basis for granting summary judgment. In that motion, she cited Arizona Rule of Civil Procedure 56(a)

and objected that the minute entry setting out the ruling "does not reflect the [c]ourt's stated grounds for its ruling from the [b]ench." On appeal, Kopacz asserts the superior court failed to address the accrual date of a claim based on lack of informed consent after that issue arose at oral argument.

¶21 By rule, "[t]he court should state on the record the reasons for granting or denying the motion." Ariz. R. Civ. Proc. 56(a). Here, the court stated in its minute entry the reason for granting summary judgment: The cause of action accrued by December 28, 2013, more than two years before Kopacz filed her complaint on January 21, 2016, and her claim therefore was barred under the statute of limitations. Even if we were to interpret the word "should" in Rule 56(a) as imposing a requirement – a proposition for which Kopacz offers no authority – the court's statement in the minute entry would have satisfied it.[4]

## CONCLUSION

¶22 We affirm the judgment in favor of the defendants.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[4] At any rate, Kopacz did not obtain and file a transcript of the hearing on the summary judgment motion. "A party is responsible for making certain the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal." *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995). "When a party fails to include necessary items, we assume they would support the court's findings and conclusions." *Id.*